S. Samuel Di Falco, S.
The objections to the executor’s account are directed solely to the rejection of the objectant’s claim for repayment of money allegedly loaned to the decedent in the total sum of $13,106.13. The executor denied the validity of the claim and pleaded the Statute of Limitations.
*902 The objectant offered no direct evidence of the making of a loan to the decedent. She attempted to establish an acknowledgment of a loan of $6,000, relying upon the acknowledgment both to prove the loan and to lift the bar of the Statute of Limitations. The writing which is offered as an acknowledgment is a paragraph in a will executed by the decedent in 1951 (later revoked), in which he bequeathed all of his property to his wife, and followed that bequest with this provision:
‘ ‘ fifth : In the event that my said wife, sophie sonnenthal, should predecease me or if we both die in the same common disaster, then and in either of such event and in accordance with an understanding with my said wife, sophie sonnenthal, the residue of our respective estates shall be disposed of in the following manner and order:
“a. To our dear friend, Mrs. Florence M. Gross, now residing at 133 West 77th Street, New York City, New York, six thousand dollars ($6,000.00) being the amount which she advanced to us up to this date and a further sum to be represented by additional advances that she might make to us hereinafter, together with a Nut Tree Antique Apothecary Cabinet and a 16th Century Cabinet with inlaid ivory figures.”
The decedent died on May 31, 1960. The objectant does not dispute that more than six years had elapsed since the making of the alleged loan, but she contends that the provision in the 1951 will constituted an acknowledgment sufficient, under section 59 of the Civil Practice Act, to take the case out of the operation of the Statute of Limitations, The last will of the decedent, which was admitted to probate, is dated March 11, 1960, and makes no mention of the objectant, The original 1951 will could not be found. The objectant offered in evidence an unsigned carbon copy and the testimony of one of the subscribing witnesses that the decedent had duly signed it. After execution of the will, the decedent took the original with him. Presumably it was destroyed by him.
The adequacy of the claimant’s proof is challenged in several respects. At the outset there is the question whether section 59 can be satisfied by secondary evidence of the “ writing signed by the party to be charged thereby.” There is also basis for argument whether the text of the provision is sufficient to satisfy the statute. However, the most serious difficulty that objectant faces is the lack of proof that the so-called acknowledgment was communicated by the decedent to the objectant or to a person whom the decedent intended was to communicate it to her, or that it was ever intended to reach her or to influence her actions. *903 The ohjoctant’s witness was a certified public accountant who had served her as accountant for many years, and who had met the decedent through the objectant. He later rendered services to the decedent as an accountant. The decedent told the witness that he owed money to the objectant, that he wished to make a will, and he asked the witness to get an attorney for him. The witness did so. In the conference with the attorney, the decedent told him that he wanted a provision to give the objectant $6,000 which he owed her and any further moneys that he might owe. The will was prepared and was executed on February 28, 1951. The witness read the draft of the will and he heard it read. He was aware that it contained the provision quoted above. The decedent signed his will and the witness, the attorney and his associate signed as subscribing witnesses. The decedent took possession of the original will, and his executor is unable to find any trace of it among the decedent’s papers.
The general rule is that the acknowledgment which will toll the running of the Statute of Limitations must be made to the creditor or to someone authorized to act on his behalf. (1952 Report of N. Y. Law Rev. Comm., p. 214, and cases cited.) In Matter of Kendrick (107 N. Y. 104, 109-110) the court considered whether an alleged acknowledgment in an answer to a petition in a proceeding in the Surrogate’s Court was a sufficient acknowledgment to toll the statute. The creditor was not a party to the proceeding in which the answer was interposed. The court said: ‘ ‘ But we are of opinion that the answer to the * * * petition was insufficient to revive the * * * judgment * * * that the acknowledgment claimed to be contained in the answer was not made to the appellant, nor to his agent, nor to any one acting in his behalf, nor was it intended to be communicated to him or to influence his conduct. An admission or acknowledgment made under such circumstances, to a stranger, is not effectual to rebut the presumption of payment or to revive a debt barred by the statute of limitations.” When the debtor acknowledges the existence of the debt to a stranger, the acknowledgment will be effective if it appears that it was the intention of the debtor that the acknowledgment should be communicated to and should influence the action of the creditor. (De Freest v. Warner, 98 N. Y. 217, 221.) Where, however, there is no intention on the part of the debtor that his statement be communicated to the creditor, the acknowledgment is not sufficient to stop the running of the statute. (Wakeman v. Sherman, 9 N. Y. 85, 91, 92; Matter of Kelly, 151 Misc. 277, 279; 2 Carmody-Wait, New York Practice, p. 361; 1 Weinstein-KornMiller, New York Civil Practice 1963, par. 201.14.)
*904 In the pending case there is no evidence respecting the decedent’s intention to make the testamentary provision known to the objectant. An obligation rested upon the attorney for the decedent to hold in confidence all transactions with his client, including the contents of the will. Lay witnesses are not bound by the same rule of professional ethics, but a transaction of this nature should be regarded as confidential. In any event, the request to a layman to attest the execution of the will cannot be regarded as a license to publish its contents to the beneficiaries, unless, of course, the maker of the will reveals an intention to authorize such publication. There is no evidence whatever to justify a finding that this decedent intended the contents of the will to be communicated to the objectant or to any other beneficiary prior to the time it would become operative and effective by his death. Here the decedent had effectively revoked that will and that provision.
There is no contention that the witness, who was also the objectant’s accountant, was acting as the objectant’s agent in attesting the decedent’s will. The testimony of this witness makes it clear that on this occasion he was advising the decedent and acting for the decedent. There is no justification whatever for regarding him in this transaction as the agent of the objectant.
The court therefore holds that the provision in the objectant’s Exhibit 1 is not sufficient to take the matter out of the operation of the Statute of Limitations.
The objectant also offered in evidence a series of checks, five of which were made in 1951, one in 1953 and five in 1954. The checks vary in amount from $15 to $500. They are made by the objectant to the order of the decedent. The checks total $2,010. All of these checks were delivered more than six years prior to the decedent’s death. The objectant relies upon the 1951 will as an acknowledgment of the supposed debt created by the delivery of these checks. The mere proof of delivery of checks is insufficient to establish the making of a loan to the decedent. In any event, the provision in the 1951 will is insufficient to lift the bar of the statute.
The objections to the account are, therefore, overruled and the claim of the objectant is dismissed.