ESTATE OF AKOS ANTHONY HORVATH, KLARI A. ERDOSS, EXECUTRIX, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2854–69.   Filed January 18, 1973.

---

*Milton Brandon*, for the petitioner.
*Agatha L. Vorsanger*, for the respondent.

STERRETT, *Judge:* Respondent determined a deficiency in petitioner's Federal estate tax return in the amount of $66,112.02 and a delinquency penalty under section 6651(a), I.R.C. 1954,[1] in the amount of $13,222.40. The issues for our determination are:

(1) Whether an issue as to the validity of a debt of the decedent, Akos Anthony Horvath, is before this Court, where the statutory notice and pleadings were framed in terms of whether the applicable State statute of limitations barred the collection of such debt.

(2) Whether the statute of limitations barred collection of a debt owed by the decedent to Massachusetts Mohair Plush Co. under the laws of New York.

(3) Whether a delinquency penalty under the provisions of section 6651(a) is applicable.

FINDINGS OF FACT

Decedent Akos Anthony Horvath died testate on April 29, 1964. Petitioner Klari A. Erdoss, the daughter of the decedent, was duly appointed executrix of the decedent's last will and testament by the Surrogate's Court of New York County, New York.

An estate tax return was due no later than 15 months after the date of decedent's death, or July 29, 1965. On May 19, 1966, an estate tax return, Form 706, was filed on behalf of the decedent with the district director of internal revenue, New York, N.Y. The petitioner resided at the time of the filing of the petition herein at Bronxville, N.Y.

Decedent was the father of three children: the petitioner herein, Ernest Horvath (hereinafter referred to as Ernest), and George A. Horvath ( hereinafter referred to as George). At the time of his death, the decedent was 89 years of age. Ernest was 61 years old and George was 55.

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.

Massachusetts Mohair Plush Co., Inc. (hereinafter referred to as the company), was a closely held corporation with its business office located in New York City. Its principal business was the manufacture of decorative and industrial fabrics.

The company's 1,500 shares of common stock were held equally by the petitioner, Ernest, and George. The decedent owned 2,500 shares of authorized and issued 6-percent cumulative, $100 par value, class A preferred stock. Thirteen thousand, three hundred shares (13,300) of class B preferred stock were issued to Shippan Enterprises, Inc., a wholly owned subsidiary, but were eliminated through consolidation.

Ernest served as president of the company, George was secretary-treasurer, and the decedent was chairman of the board of directors. All three were salaried employees of the company. Management of the company was informal in that the board of directors never met as such. The decedent, father to the other officers, exercised final authority on most decisions concerning business operations. He played an active role in the company until just prior to his death. Petitioner did not take an active role in the management of the company, nor did she receive a salary.

The decedent, Ernest, and George commonly made withdrawals from the company. These were usually evidenced by demand notes or on open account. A certified financial statement of the company for the period ended April 30, 1964, reflected these withdrawals as assets under the heading "Notes and Loans Receivable—Officers and Others . . . $1,385,623."

In response to a request for verification of receivables from accountants conducting an audit of the company, decedent executed the following written statement:

FEBRUARY 12, 1963

WASSERMAN & TATEN
*501 Fifth Avenue*
*New York, N.Y.*

GENTLEMEN:
This is to certify that as of September 29, 1962, I was indebted to Massachusetts Mohair Plush Company, Inc. on a non-interest bearing note for $310,510.80 and on open account for $110,498.11.
Very truly yours,

(S) Akos A. Horvath
AKOS A. HORVATH

In this last will and testament executed on December 13, 1962, and admitted to probate on May 15, 1964, decedent included the following clause:

THIRTEENTH:

I hereby direct and authorize my Executors, as soon after my death as may be possible, to tender all of the preferred stock of Massachusetts Mohair Plush

Co., Inc. (hereinafter referred to as "Corporation"), which I may own at my death (it should be approximately $250,000 face value) to Corporation in exchange for satisfaction of such indebtedness I may have to said Corporation, as may appear on its books and records (it should be approximately $400,000) at the time of my death.

If Corporation is not willing to accept such tender, then I direct my Executors to enforce the rights of the preferred stock so as to obtain maximum value therefor before arranging to pay my indebtedness to Corporation.

Between 1963 and 1964 the company was short of ready cash and was not able to pay many of its debts, including the Federal withholding tax then due. By 1969 the company was bankrupt.

Petitioner included among the debts of the decedent on his estate tax return the sum of $422,958.91 as "Non-interest bearing loans from Massachusetts Mohair Plush Co., Inc." This amount entered into the computation of decedent's taxable estate.

In his statutory notice of deficiency sent pursuant to section 6212, respondent disallowed this deduction by stating: "Schedule K, item 1, in the amount of $422,958.91 is disallowed since the statute of limitations on this debt can be pleaded to bar collection."

The petition herein addressed itself solely to finding error in respondent's determination that the statute of limitations had run on decedent's debt. Respondent's answer affirmed or denied each allegation of the petition, but raised no affirmative defenses.

In his opening statement to this Court, respondent stated that he questioned the underlying validity of decedent's indebtedness to the company and alternatively would rely on the statute of limitations to bar collection. During the course of the trial petitioner objected to the introduction of the validity theory on the basis of surprise.

OPINION

The first issue we must decide is whether respondent may question the validity of decedent's underlying indebtedness to the company.

In his notice of deficiency, respondent disallowed a deduction taken by the petitioner pursuant to section 2053(a)(3) in the following language: "Schedule K, item 1, in the amount of $422,958.91 is disallowed since the statute of limitations on this debt can be pleaded to bar collection."

The petition herein was addressed solely to claiming error in respondent's determination that the statute of limitations had run on decedent's debt. The answer merely affirmed or denied the allegations without raising any affirmative defenses. The pleadings were without amendment.

Petitioner's opening statement to this Court was entirely consistent with the pleadings herein. However, respondent stated in his opening

statement that he did not intend to limit his reliance solely to the statute of limitations, but also wished to attack the underlying validity of the debt. Petitioner claimed surprise, arguing that the issue had been narrowed sufficiently to forego any discussion of the validity of the debt. Further she argued that in order properly to decide this issue, substantially new and different facts would have to be brought forward, and to require petitioner to do so at the hearing would be unjust and prejudicial to her case.

Respondent asserts that attacking the validity of the debt simply constitutes another reason for upholding the original determination of a deficiency.

It is well settled that the respondent's determination may be affirmed for reasons other than those assigned in his notice of deficiency. *Estate of Peter Finder*, 37 T.C. 411 (1961); *Standard Oil Co.*, 43 B.T.A. 973 (1941), affd. 129 F. 2d 363 (C.A. 7, 1942). However, it is equally clear that the Court must determine whether there has been surprise and substantial disadvantage to the petitioner in the presentation of his case because of the manner in which the statutory notice and pleadings were drawn when compared to the issues raised at the trial. *Mills* v. *Commissioner*, 399 F. 2d 744, 748 (C.A. 4, 1968), affirming a Memorandum Opinion of this Court; *Richard Rubin*, 56 T.C. 1155 (1971), affirmed per curiam 460 F. 2d 1216 (C.A. 2, 1972); *Nat Harrison Associates, Inc.*, 42 T.C. 601, 617 (1964). In this Court's opinion, it is appropriate to determine whether surprise and disadvantage are present prior to making the often esoteric finding that a particular theory advanced by the respondent has characteristics more like new "reasons" than new "issues" or "matters." [2] This is so because once surprise and substantial detriment are found, the theory, whether a new reason or new issue, need not be heard by this Court. Cf. *Commissioner* v. *Chelsea Products*, 197 F. 2d 620, 624 (C.A. 3, 1952), affirming 16 T.C. 840 (1951); *Richard R. Riss, Sr.*, 56 T.C. 388, 400 (1971), supplementary opinion 57 T.C. 469 (1971), on appeal (C.A. 8, June 26, 1972).

Respondent urges that there was no surprise because petitioner was fully informed at a conference well in advance of the trial that the validity of the debt would be questioned. Conversely petitioner claimed surprise and indicated her first awareness of the new theory was in respondent's opening statement to the Court. In light of the manner in which the notice of deficiency was drawn, surprise as to the basis

[2] The cases in this area are numerous and varied. The importance of distinguishing between reasons and issues (often a difficult task not done with much consistency) lies with the resultant shifting of the burden of proof when new issues are presented, normally in respondent's answer. If merely a new reason, the burden remains with the taxpayer. See Rule 32, Tax Court Rules of Practice.

on which respondent really intended to rely when the chips were down, seems probable. Nothing in petitioner's actions indicates to us that she was aware that any issue other than the statute of limitations would be argued. Petitioner's opening remarks to this Court and all of her evidence were directed to the statute of limitations. Indeed, from the pleadings herein, it was not unreasonable for petitioner to assume that the validity of the debt was not seriously in dispute. Further the facts required to face adequately the statute of limitations question presented are almost totally different from those necessary to prove the underlying validity of the debt. To require petitioner to argue the validity of the debt at the trial under these circumstances would severely prejudice her case and violate the fundamental fairness necessary in carrying out the judicial function. We hold that petitioner was surprised and that her ability to present her case was severely prejudiced by such surprise.

Any doubts we may have with regard to petitioner's surprise must be dismissed when we consider the potential abuses which could occur by the use of "informal" means of communicating new theories which are not inherent in respondent's original determination. If respondent desired this theory to be before the Court, he could have amended his pleadings to clearly inform the petitioner and the Court of his intended lines of attack.

Finally, we note our disagreement with respondent that the underlying debt constitutes a new reason for affirming his determination. Respondent did not phrase his deficiency in broad or ambiguous language. See *Big "D" Development Corp.* v. *Commissioner*, 453 F. 2d 1365 (C.A. 5, 1972), affirming a Memorandum Opinion of this Court; *Mills* v. *Commissioner, supra; Manuel D. Mayerson*, 47 T.C. 340, 349 (1966); *Nat Harrison Associates, Inc., supra.* Were this the case we would agree that the validity of the debt was in issue, and the burden of proving the deductibility of the debt would remain with petitioner. If, however, the Commissioner asserts an alternative theory which is different from and inconsistent with the earlier determination of the deficiency, it must be properly pleaded and proven. *Sheldon Tauber*, 24 T.C. 179, 185 (1955). If properly pleaded, the burden of proof shifts to the respondent. *Rozelle McSpadden*, 50 T.C. 478, 493 (1968); *Arthur Sorin*, 29 T.C. 959, 969 (1958); Rule 32, Tax Court Rules of Practice. A new issue not raised in the pleadings will ordinarily not be heard by the Court. *William E. Robertson*, 55 T.C. 862, 865 (1971); *J. William Frentz*, 44 T.C. 485, 491 (1965). In the instant case, respondent pinpointed the basis of his determination as the running of the statute of limitations on decedent's indebtedness. Because we feel that questioning the underlying validity of the debt is inconsistent with a determination based on the statute of limita-

tions and because different evidence is required, we are inclined to call this a new issue. To permit respondent to rely on this ground, without formal notice, is unreasonable. See *Arthur Sorin, supra* at 969.

We must now turn our attention to whether the applicable New York statute of limitations bars collection of decedent's indebtedness to the company, thereby not qualifying as an allowable claim within the meaning of section 2053(a)(3).

Decedent died on April 29, 1964. His last will and testament was admitted to probate in the Surrogate's Court of New York County, New York.

Section 2053(a) states:

SEC. 2053. EXPENSES, INDEBTEDNESS, AND TAXES.

(a) GENERAL RULE.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

\* \* \* \* \* \* \*

(3) for claims against the estate, and

\* \* \* \* \* \* \*

as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.

It is apparent from the statutory language quoted above that as a prerequisite to deductibility the company must have an allowable claim against the decedent's estate under New York law.

No evidence was introduced as to when the loans were made or the amount of each individual loan. Some were evidenced by demand notes and others were an open account.

In a certified financial statement of the company for the period ending April 30, 1964, the indebtedness of the decedent, Ernest, George, and others was carried as an asset in the amount of $1,385,623.

In response to a normal request for verification of receivables from accountants conducting an audit of the company, the decedent executed the following:

FEBRUARY 12, 1963

WASSERMAN & TATEN
*501 Fifth Ave.*
*New York, N.Y.*

GENTLEMEN:

This is to certify that as of September 29, 1962, I was indebted to Massachusetts Mohair Plush Company, Inc. on a non-interest bearing note for $310,510.80 and on open account for $110,498.11.

Very truly yours,

(S) Akos A. Horvath
AKOS A. HORVATH

It is petitioner's contention that decedent's written response to the accountants, who used this information in preparing the company's

financial statement, was an acknowledgment sufficient to take the debt outside the normal operation of the statute of limitations.

General Obligations Law sec. 17–101 states:

Sec. 17–101. Acknowledgment or new promise must be in writing

An acknowledgment or promise contained in a writing signed by the party to be charged thereby is the only competent evidence of a new or continuing contract whereby to take an action out of the operation of the provisions of limitations of time for commencing actions under the civil practice law and rules other than an action for the recovery of real property. This section does not alter the effect of a payment of principal or interest.

From the case law we find that this statute provides the sole method whereby a debt may be removed from the effect of the statute of limitations. *Greenfield* v. *Kaplan*, 15 Misc. 2d 718, 179 N.Y.S. 2d 381 (Kings County Sup. Ct. 1958). Only the party to be charged may extend the statute of limitations. *Mirsky* v. *Essex Shirt Co.*, 8 Misc. 2d 715, 168 N.Y.S. 2d 238 (Kings County Sup. Ct. 1957). In general the acknowledgment must be made to the creditor or someone on his behalf. *In re Sonnenthal's Estate*, 39 Misc. 2d 901, 242 N.Y.S. 2d 135 (N.Y. County Surr. Ct. 1963). In form the acknowledgment must be in writing and import an intention to pay or at least contain nothing inconsistent with an intention to pay. *Sanderson* v. *Sanderson*, 233 N.Y.S. 2d 268 (N.Y.C. Civ. Ct. 1962), modified 237 N.Y.S. 2d 922 (Sup. Ct. 1963); *In re Meyrowitz' Estate*, 114 N.Y.S. 2d 541, affd. 284 App. Div. 801, 132 N.Y.S. 2d 327 (1st Dept. 1954); *Curtiss-Wright Corp.* v. *Intercontinent Corp.*, 277 App. Div. 13, 97 N.Y.S. 2d 678 (1st Dept. 1950).

Applying the statute and cases to decedent's written response to the accountants conducting an audit of the company, we find that the writing fully complied with General Obligations Law sec. 17–101. The writing was signed by the decedent and sent to accountants working for the company. Though perhaps independent contractors, as respondent argues, they were still acting on behalf of the company. See *Wakeman* v. *Shorman*, 9 N.Y. 85 (1853). Further, the writing was entirely consistent with an intention to pay. Respondent on brief indicates that writings in response to accountants working on audits cannot be considered acknowledgments, based on the concurring decision in *Curtiss-Wright Corp.* v. *Intercontinent Corp.*, *supra*. In that case the majority held that a written statement acknowledging a debt, but indicating a greater amount was due from the creditor, was not consistent with an intention to pay. For this reason we are unable to see how the writings were similar. We, therefore, hold that the statute of limitations did not bar collection of this debt and the amount of $422,958.91 was properly deductible under section 2053(a)(3).

We do not feel it necessary to pass on whether decedent's will con-

stituted an acknowledgment or whether decedent's position of ownership and authority within the company would estop his estate from invoking the statute of limitations to bar collection of the debt.

No evidence was presented to explain why the estate tax return was untimely filed with the district director. Accordingly we would sustain respondent's determination that 6651(a) is applicable. Pursuant to section 6651(b) the penalty is based on the net amount due. Thus, the penalty is without consequence since we have determined there is no estate tax liability herein.

*Decision will be entered for the petitioner.*