SEABOARD AUTOMOTIVE, INC., ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Seaboard Automotive, Inc. v. Commissioner
Docket Nos. 7347-78, 7852-78, 8063-78.
United States Tax Court
T.C. Memo 1981-392; 1981 Tax Ct. Memo LEXIS 344; 42 T.C.M. (CCH) 529; T.C.M. (RIA) 81392; July 30, 1981. *344 In 1971, S sold an automotive parts business for $ 200,000. Held, portion of such price allocable to inventory determined. Robert M. Broder, Herman Finkelstein, and Samuel N. Rabinowitz, for the petitioner in docket No. 7347-78. Gerald F. Leech, pro se in docket No. 7852-78. Herman Winderman, for the petitioners in docket No. 8063-78. Stephen E. Sokolic, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined the following deficiencies in, and additions to, the petitioners' *345 Federal income taxes: Addition to Tax
Taxable Year
Sec. 6651(a)(1)
Petitioner
Ending
Deficiency
I.R.C. 1954 [2]
Seaboard Automotive,
6/30/73
$ 13,151.67
Inc.
Woodbury Auto Supply,
6/30/73
9,133.63
$ 456.68
Inc.
Gerald F. Leech and
12/31/72
57,171.21
Joanne V. Leech
Estate of David Samuel,
12/31/71
74,518.20
Deceased, Helen
Samuel, Executrix,
and Helen Samuel
Petitioner Woodbury Auto Supply, Inc., concedes that it is liable for the addition to tax under section 6651(a)(1) if there is a deficiency in its income tax for its taxable year ending June 30, 1973. [3] Additional concessions have been made by petitioners Estate of Mr. Samuel and Helen Samuel, and the only issues to be decided are what portion of the amount paid in 1971 for the purchase of Woodbury Auto Supply, an automotive parts business, was allocable to the inventory of the business, and (2) in what proportion was such inventory later divided between two corporations. *346 FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. Petitioner Seabord Automotive, Inc. (Seaboard), was a New Jersey corporation with its principal place of business in Almonessen, N.J., at the time of filing its petition in this case. Petitioner Woodbury Auto Supply, Inc. (Woodbury Inc.), was also a New Jersey corporation; it maintained its principal place of business in Thorofare, N.J., at the time of filing its petition in this case. Seaboard and Woodbury Inc. filed their Federal income tax returns on the basis of a taxable year ending June 30, and we shall sometimes identify their taxable years by the calendar year in which they ended. Seaboard filed its corporate Federal income tax return for its taxable year 1973 with the Internal Revenue Service Center, Holtsville, N.Y., and Woodbury Inc. filed its corporate Federal income tax return for the same year with the Internal Revenue Service. Petitioners Gerald F. and Joanne V. Leech, husband and wife, resided in Mullica Hill, N.J., when they filed their petition in this case. Petitioner Helen Samuel resided in Cherry Hill, N.J., when she filed the petition on behalf of herself and the *347 Estate of David Samuel. David Samuel was the husband of Helen Samuel. Mr. and Mrs. Samuel timely filed a joint Federal income tax return for 1971 with the IRS in Philadelphia, Pa., and Mr. and Mrs. Leech timely filed a joint Federal income tax return for 1972 with the IRS. For several decades prior to November 1971, David Samuel conducted an automotive supply business as a proprietorship in Woodbury, N.J. Such business was known as Woodbury Auto Supply (Woodbury Auto), and it was engaged in selling automotive parts at both retail and wholesale and in rebuilding engines. During the summer of 1971, Mr. Samuel met with Mr. Leech and with James R. Coulter concerning the possibility of selling Woodbury Auto to them. Mr. Samuel set a price of $ 225,000 for the business, and he asked that $ 50,000 be paid in cash and the balance by promissory note. After the initial meeting, Mr. Coulter withdrew from the negotiations. However, Mr. Leech continued the negotiations, and eventually, Mr. Samuel reduced the price to $ 200,000 and the cash payment to $ 40,000. Subsequently, Mr. Coulter expressed to Mr. Leech renewed interest in purchasing the business, and the two agreed to go forward *348 with the purchase as equal partners. On September 27, 1971, Mr. Leech, together with Mrs. Leech, executed a contract to purchase Woodbury Auto from Mr. Samuel for $ 200,000. Mr. Coulter did not execute the agreement or disclose to Mr. Samuel that he and Mr. Leech were partners in the purchase. On November 20, 1971, the sale was closed, and Mr. Samuel executed a bill of sale transferring the business to Mr. and Mrs. Leech. The bill of sale stated that the following assets were included in the sale: stock in trade, fixtures, equipment, good will, the trade name "Woodbury Auto Supply," licenses, leases, records, customer lists, correspondence, files, work in progress, and all rights under contracts. The equipment transferred in the sale included a 1971 Chevrolet van truck, a 1967 Ford HD van truck, a 1965 Chevrolet 3/4 ton truck, 3 adding machines, 4 invoice machines, 3 desks, 5 chairs, 3 file cabinets, office shelves, a cash register, an electric typewriter, a copying machine, an air conditioner, a fan, and the equipment used to rebuild engines. In the bill of sale, Mr. Samuel also covenanted that for 10 years he would not establish, or become interested in, or become employed *349 in any automotive supply business within 20 miles of Woodbury Auto. The covenant was made inapplicable to Economy Auto Supply, Inc., in Bridgeton, N.J., another business owned by Mr. Samuel. After the sale of Woodbury Auto, Mr. Leech operated the business as a proprietorship. On December 15, 1971, Mr. Leech and Mr. Coulter entered into a preincorporation agreement providing for the formation of "Woodbury Auto Supply, Inc. and/or Seaboard Automotive, Inc." Subsequently, Woodbury Inc. and Seaboard were incorporated. Mr. Coulter, together with his wife, received a one-half interest in each corporation, and Mr. and Mrs. Leech received the other one-half interest in each corporation. On June 30, 1972, Woodbury Inc. and Seaboard commenced operations by assuming the operations of Woodbury Auto; the retail operations of Woodbury Auto were transferred to Woodbury Inc., and the wholesale operations were transferred to Seaboard. [4] Sometime in 1973, Mr. and Mrs. Coulter became the sole owners of Seaboard, and Mr. and Mrs. Leech became the sole owners of Woodbury Inc.
On their joint Federal income tax *350 return for 1971, Mr. and Mrs. Samuel reported a gain of $ 168,208 from the sale of Woodbury Auto, and they elected to report the gain on the installment method provided by section 453. They also reported that of such gain, $ 142,526 was attributable to machinery and equipment having an adjusted basis of $ 6,138 and that the balance, $ 25,682, was attributable to inventory having a basis of $ 25,654. Mr. and Mrs. Samuel reported the gain on inventory as ordinary income and the gain on machinery and equipment as capital gain. On their joint Federal income tax return for 1971, Mr. and Mrs. Leech reported a net loss of $ 374.44 from the operation of Woodbury Auto from November 20, 1971, through December 31, 1971. [5] On their return for 1972, Mr. and Mrs. Leech reported net income of $ 10,740.31 from the operation of Woodbury Auto for 1972. In computing the loss for 1971, Mr. and Mrs. Leech reported as the cost of goods sold $ 31,036.45, and in computing the income for 1972, they reported as the cost of goods sold $ 218,205.32. The amounts reported as cost of goods sold were computed as follows: *351 1971
1972
Opening inventory
$ 185,040.00
$ 182,270.91
Purchases
28,190.31
162,961.17
Miscellaneous costs
77.05
Freight charges
337.21
Total
$ 213,307.36
$ 345,569.29
Less: closing inventory
182,270.91
127,363.97
Cost of goods sold
$ 31,036.45
$ 218,205.32
On their corporate Federal income tax returns for their taxable years July 1, 1972, through June 30, 1973, Seaboard and Woodbury Inc. reported net losses of $ 42,854.20 and $ 9,884.60, respectively. They reported as their cost of goods sold $ 734,389.00 and $ 233,432.63, computed as follows: Seaboard
Woodbury
Opening inventory
$ 84,909.31
$ 42,454.66
Purchases
779,209.60
240,105.39
Other costs - freight
2,235.71
Total
$ 866,354.62
$ 282,560.05
Less: closing inventory
131,965.62
49,127.42
Cost of goods sold
$ 734,389.00
$ 233,432.63
In the notice of deficiency sent to the Estate of Mr. Samuel and to Mrs. Samuel, the Commissioner determined that of the $ 200,000 received by Mr. Samuel for Woodbury Auto, $ 185,040 was allocable to the sale of inventory, and the remainder, $ 14,960, was allocable to the sale of machinery and equipment. As a result, *352 he also determined that the gain on inventory was $ 159,386 ($ 185,040 less the basis of $ 25,654 reported by Mr. and Mrs. Samuel) and that the gain on machinery and equipment was $ 8,822 ($ 14,960 less the adjusted basis of $ 6,138 reported by Mr. and Mrs. Samuel). Finally, the Commissioner deter-mined that the gain on inventory did not qualify for installment reporting under section 453. In the notice of deficiency sent to Mr. and Mrs. Leech, the Commissioner accepted the amount reported by Mr. and Mrs. Leech as the cost of goods sold of Woodbury Auto for 1971, and he determined that there was no deficiency for such year. However, he determined that the value of the inventory purchased by Mr. and Mrs. Leech from Mr. Samuel was $ 25,654, or $ 159,386 less than that reported by them on their 1971 return, and that the closing inventory for such year should be reduced by the same amount, to $ 22,884.21. Because the Commissioner determined that the closing inventory for 1971 was $ 22,884.21, he also determined that the opening inventory for 1972 was $ 22,884.21. Accordingly, he reduced the cost of goods sold for such year by $ 159,386, the amount by which he had reduced the inventory *353 figures. The result of the recomputation was to increase the taxable income of Mr. and Mrs. Leech, before changes in medical and sales tax deductions, by the same amount. In his notices of deficiency sent to Seaboard and Woodbury Inc., the Commissioner determined that the opening inventory of each corporation for its taxable year 1973 was zero, and not the amount reported by each company in its computation of the cost of goods sold. Since Seaboard had reported an opening inventory of $ 84,909.31, the Commissioner reduced by that amount the cost of goods sold reported by such corporation and increased by that amount the income reported by such corporation. Similarly, since Woodbury Inc. had reported an opening inventory of $ 42,454.66, the Commissioner reduced by that amount the cost of goods sold reported by such corporation and increased by that amount the income reported by such corporation. OPINION The principal issue for decision is what portion of the purchase price of Woodbury Auto was allocable to the inventory of the business. See Williams v. McGowan, 152 F. 2d 570 (2d Cir. 1945). In the case of Mrs. Samuel and the Estate of Mr. Samuel, the Commissioner *354 determined that $ 185,040 of the price was allocable to inventory, and in the case of Mr. and Mrs. Leech, he adopted an inconsistent position and determined that only $ 25,654 of the price was allocable to inventory. Whatever portion we decide was so allocable will determine first the amount of gain realized by Mr. Samuel on such inventory when he sold Woodbury Auto. Mrs. Samuel and the Estate of Mr. Samuel admit that such gain was ordinary income, and they do not challenge the Commissioner's determination that such gain was not reportable on the installment method. Our decision also will determine the cost of goods sold of Seaboard and Woodbury Inc. for their 1973 taxable years. Seaboard and Woodbury Inc. were not involved in the original purchase of Woodbury Auto, but the Commissioner has determined that Mr. and Mrs. Leech allocated an excessive portion of the price of Woodbury Auto to inventory on their 1971 tax return, that the error was also reflected on their 1972 return, and that the error was finally passed through to Seaboard and Woodbury Inc.; the Commissioner contends that such corporations over-stated their opening inventories for their 1973 taxable years by the amount *355 of te excess allocation (but not by more than $ 127,363.97, the aggregate amount reported by them as opening inventory). Seaboard, Woodbury Inc., and Mr. and Mrs. Leech agree that the adjustment should be passed through to Seaboard and Woodbury Inc., if Mr. and Mrs. Leech did overstate Woodbury Auto's opening inventory for 1971. [6]
Although Mr. and Mrs. Leech were the original purchasers of Woodbury Auto, our decision will have no effect on them unless we determine that they overstated opening inventory for 1971, and therefore for 1972, by more than $ 127,363.97: For 1971, the Commissioner determined no deficiency in their tax; for 1972, he determined that they overstated openting inventory and understated income as a result, but in his brief, he has now adopted a consistent position and urges that when we have determined the portion of the purchase price allocable to inventory, the opening and closing inventories of Mr. and Mrs. Leech for 1971 and 1972 should be adjusted accordingly. Since *356 Mr. And Mrs. Leech reported a closing inventory of $ 127,363.97 in 1972, there will be no deficiency in their tax for 1972 unless they overstated opening inventory by more than such amount. The primary stakeholders in these cases are Mrs. Samuel and the Estate of Mr. Samuel on the one hand, and Seaboard and Woodbury Inc. on the other; the Commissioner contends merely that the Court should adopt a consistent position. Seaboard and Woodbury Inc. insist that of the assets listed in the bill of sale executed by Mr. Samuel, only the inventory (listed as stock in trade) and the equipment were of any value and that the value of equipment was relatively small. They conclude that almost all of the price paid for Woodbury Auto was allocable to inventory. On the other hand, Mrs. Samuel and the Estate of Mr. Samuel insist that the value of the equipment was at least $ 33,000 and that the goodwill and the contract rights listed in the bill of sale also had substantial value. They have not argued that any of the other assets listed in the bill of sale, including the covenant not to compete, had value, but they conclude that because of the value of the equipment, goodwill, and contract rights, *357 relatively little of the purchase price of Woodbury Auto was allocable to inventory. There was substantial testimony introduced at trial to show that the value of Woodbury Auto's inventory at the time of the sale was high. Peter Bertotti, who was president of an automotive parts wholesaler, vice president of the New Jersey Automotive State Jobbers Association, and a friend of Mr. Coulter, testified that in March 1972, he had assisted Mr. Coulter in transferring some of the inventory of Woodbury Auto to the future location of Seaboard. One of the product lines which he observed was a line of gaskets, mufflers, and pipes manufactured by the McCord Manufacturing Company. Mr. Bertotti stated that the packaging of such merchandise indicated that the merchandise had been purchased months earlier, and in his opinion, such merchandise had a value of at least $ 50,000. Mr. Bertotti also stated that a business like Woodbury Auto would probably have carried 80 to 100 product lines and that the McCord line was one of the major lines. Another witness was James J. McDaid, who was a regional sales manager for TRW, Inc., principally involved in the sale of automotive parts. Mr. McDaid testified *358 that in early 1972, Mr. Leech and Mr. Coulter desired to purchase merchandise from TRW on credit and that, as a prerequisite to the extension of credit, he, Mr. McDaid, inspected Woodbury Auto's inventory. He stated that among the merchandise in the inventory there was a line of engine and chassis parts manufactured by McQuay-Norris, that such parts did not appear to have been freshly purchased, and that the value of such parts was approximately $ 35,000. He also testified that a business like Woodbury Auto probably would have carried about a hundred product lines. A third witness in support of the position that the value of the inventory was high was Albert Tierno. At the time of trial, Mr. Tierno was a warehouse supervisor for an automotive supply business in New Jersey. From 1960 until early 1979, he had been employed by Woodbury Auto and one of its successors, Woodbury Inc. Mr. Tierno corroborated the testimony of Mr. Bertotti and Mr. McDaid as to the value of the McCord and McQuay-Norris lines in 1971. He also recalled that in 1971 the inventory contained the following additional product lines, among others: Product
Value
Gates Rubber products
$ 12,000
Philco ignition products 8,000-9,000
Champion spark plugs 1,500
Dorman products 3,000
BCA bearings 2,500
Carburetors, clutch and pressure
plates, and master cylinders 16,000-17,000
National oil seals 1,000
Engines 3,000
Cylinder heads 2,000
*359 In Mr. Tierno's opinion, the entire inventory was worth more than $ 200,000. Mr. Coulter and Mr. Leech also testified as to the value of inventory. Mr. Coulter stated that "I honestly thought * * * [the value] was in excess of $ 200,000.00." Mr. Leech gave no precise figure for the value, but he testified that the merchandise was "bulging at the seams." Mr. Leech explained that he was familiar with Mr. Samuel's inventory since he had been a salesman prior to purchasing Woodbury Auto, had sold McCord mufflers and Philco ignition products to Mr. Samuel, and had frequently arranged such merchandise on Mr. Samuel's shelves. He stated that Mr. Samuel did not keep accurate inventory records and was not aware that his inventory was extensive. There was virtually no evidence introduced to refute the testimony of the foregoing witnesses. Mrs. Samuel and the Estate of Mr. Samuel did introduce the testimony of an accountant, Israel Saidel, who had performed services for Mr. Samuel for approximately 15 years prior to the sale of Woodbury Auto, but such testimony weas not persuasive. Mr. Saidel testified that the "basis" of Woodbury Auto's inventory at the time of the sale was $ 25,653. *360 Yet, no party in this matter has challenged the inventory basis figure reported by Mr. and Mrs. Samuel on their 1971 tax return; rather, the resolution of the issue in this case depends upon the extent to which the value of such inventory was greater than basis at the time of sale, and Mr. Saidel did not address that question. Woodbury Auto was an old business at the time of the sale, and it is likely that much of its inventory had appreciated substantially over the years. Moreover, even if the basis of Mr. Samuel's inventory were at issue here, Mr. Saidel admitted that he never took a physical inventory of Woodbury Auto and that all the inventory figures were supplied to him by Mr. Samuel. In general, Mr. Bertotti, Mr. McDaid, and Mr. Tierno, as well as Mr. Leech and Mr. Coulter, were credible witnesses, and it appears from their testimony that the inventory of Woodbury Auto was very substantial. In our opinion, the value of such inventory in November 1971 was approximately $ 200,000. If we were satisfied that the value of Woodbury Auto in 1971 was equal to the amount which Mr. Samuel received for the business, $ 200,000, our decision as to the value of the inventory would *361 also represent the portion of the purchase price allocable to inventory. However, it appears that the equipment and goodwill transferred in the sale also had substantial value and that the value of all the assets exceeded $ 200,000. In fact, Mr. Coulter and Mr. Leech both conceded at trial that $ 200,000 was a low price for the business. Therefore, in order to determine the portion of the purchase price allocable to inventory, we must determine the value of the other assets considered by Mrs. Samuel and the Estate of Mr. Samuel as having value--the equipment, goodwill, and contract rights. With respect to the equipment, there was testimony at trial by Paul Sloan and by Mr. Tierno relating to the value of such assets. Mr. Sloan had had substantial experience in the automotive parts business, and in his opinion, the items of equipment other than office equipment had an aggregate value of $ 33,198 in 1971. However, Mr. Sloan's testimony was unpersuasive for he admitted that he never actually saw the equipment and that he did not know the age of many of the items or the condition of any of the items. Mr. Tierno was more credible inasmuch as he had been employed at Woodbury Auto *362 and had seen the equipment. He testified that the value of the "shop equipment" used to rebuild engines was $ 12,000 to $ 15,000 in 1971. Since Mr. Tierno testified on behalf of Seaboard and Woodbury Inc., we find, on the basis of his testimony, that the value of the shop equipment was $ 15,000. Other than shop equipment, the equipment transferred in the sale consisted of office equipment and three trucks. There is no evidence as to the value of the office equipment, and no credible evidence as to the value of the trucks; we must use our best judgment and estimate such values. In our opinion, the aggregate value of the trucks and office equipment was approximately $ 7,500, and the aggregate value of all the equipment was approximately $ 22,500. With respect to goodwill, the parties disagree both on the method of computing the value of such asset and on the result. On behalf of Mrs. Samuel and the Estate of Mr. Samuel, Mr. Saidel testified that small businesses such as Woodbury Auto usually have goodwill equal to approximately 1/3 of sales. In a written report prepared from the books and records of Woodbury Auto, Mr. Saidel stated that Woodbury Auto had the following sales *363 and net profits for the years 1967 through 1971: Year
Sales
Net Profits
1967
$ 324,485
$ 22,762
1968
343,886
24,744
1969
338,711
24,280
1970
363,855
23,551
1971
340,437
27,416
Based on the sales figures, Mr. Saidel estimated that in 1971, Woodbury Auto had goodwill worth from approximately $ 90,000 to approximately $ 150,000. On the other hand, Seaboard and Woodbury Inc. argue that the use of a formula for computing goodwill is inappropriate in this case; they contend that Woodbury Auto had no goodwill. In support of their contention, they rely mainly on testimony of Mr. Leech that the sale of Woodbury Auto was, in substance, a sale of inventory. Neither of the foregoing positions is persuasive. On the one hand, Woodbury Auto had operated successfully for many years prior to its sale, and it is likely that the business had developed a valuable reputation during that period. In addition, it is likely that the business possessed experienced employees, such as Mr. Tierno, established operating procedures, and other such intangible assets. On the other hand, Mr. Saidel's method of estimating goodwill fails to take into account the net profits *364 and capital of the business; a business could have substantial sales and yet, if it were not profitable, it would not have goodwill. When there is a lack of persuasive direct evidence as to the value of the goodwill of a business, the Tax Court has often held that goodwill should be computed by capitalizing those profits of the business in excess of a reasonable return on tangible assets. See The Toledo Newspaper Co. v. Commissioner, 2 T.C. 794 (1943); Shanley & Furness, Inc. v. Commissioner, 21 B.T.A. 146 (1930); Schilling Grain Co. v. Commissioner, 8 B.T.A. 1048 (1927). Such formula also has been endorsed by the Treasury Department in Revenue Ruling 68-609, 1968-2 C.B. 327, and in fact, Seaboard has taken the position that if a formula method of valuing goodwill is appropriate to this case, the capitalization method should be used. In our judgment, this is an appropriate case for the application of the capitalization method since there is a dearth of direct evidence. There is a question as to what rate of return and what capitalization rate should be used. The revenue ruling suggested that 8 percent be considered *365 a reasonable return for a low-risk business and that excess earnings should be capitalized at a 15-percent rate for such a business. Inasmuch as such ruling was published in 1968, relatively close to the time for valuing the goodwill, and inasmuch as Woodbury Auto was probably a low-risk business, it is reasonable to apply such figures to this case. When we apply such figures, we arrive at a value of $ 45,007 for goodwill, computed as follows: (1) Average net profits 1967-1971: $ 22,762 + 24,744 + 24,280 + 23,551 + 27,416 = $ 122,753 $ 122,753./. 5 = $ 24,551 (2) Reasonable return on tangible assets: $ 222,500 x 8 percent = $ 17,800 (3) Excess profits: $ 24,551 - 17,800 = $ 6,751 (4) Goodwill: $ 6,751./. 15 percent = $ 45,007 The only other assets which Mrs. Samuel and the Estate of Mr. Samuel contend had value were contract rights. There has been no attempt to assign a specific value to any such rights; it is merely contended that there were valuable contract rights. However, the only evidence introduced to show the existence of such rights was testimony of Mr. Saidel, and Mr. Saidel was unable to specify any such rights. On the other hand, Mr. Coulter testified *366 that there were no valuable contract rights transferred. Under the circumstances, we conclude that the value of any contract rights which may have been transferred was negligible. In summary, we have concluded that the value of the inventory was $ 200,000, that the value of equipment was $ 22,500, that the value of goodwill was $ 45,007, and that the value of the contract rights was negligible. Thus, the total value of the assets transferred was approximately $ 267,007, and we conclude that of the purchase price of $ 200,000, $ 149,909 [7] was attributable to inventory. As a result, the closing inventory of Woodbury Auto for 1972 and the aggregate opening inventories of Woodbury Inc. and Seaboard for their 1973 taxable years should be reduced by $ 35,131. The only other issue to be decided is what portion of Woodbury Auto's inventory was transferred to Seaboard and what portion was transferred to Woodbury Inc. The only evidence relating to such question is testimony by Mr. Leech and Mr. Tierno. Mr. Leech testified that Seaboard received more of the inventory than Woodbury Inc., and Mr. Tierno testified that Seaboard received *367 approximately 60 percent of the inventory. On the basis of such testimony, we conclude that Seaboard received 60 percent of Woodbury Auto's inventory and that Woodbury Inc. received 40 percent. In his brief, the Commissioner raises an additional issue for the first time. He contends that certain depreciation deductions taken by Mr. and Mrs. Leech on their 1972 return, and by Woodbury Inc. on its return for its taxable year 1973, with respect to the equipment received from Mr. Samuel should be partially disallowed. However, such issue was raised neither in the notices of deficiency, nor in the answers, nor at trial, and there is absolutely no basis for our adjusting such depreciation deductions. See Estate of Horvath v. Commissioner, 59 T.C. 551, 555 (1973). To reflect our decision, and in view of the concessions, Decisions will be entered under Rule 155. Footnotes
1. Cases of the following petitioners are consolidated herewith: Gerald F. Leech and Joanne V. Leech, and Woodbury Auto Supply, Inc., docket No. 7852-78; and Estate of David Samuel, Deceased, Helen Samuel, Executrix, and Helen Samuel, docket No. 8063-78.↩
2. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.↩
3. We recognize that the addition to tax under sec. 6651(a)(1) is not a function of the deficiency, but that it is a function of the difference between the amount of tax required to be paid and the amount of tax actually paid on or before the date for timely filing the tax return. However, in this case, the addition determined by the Commissioner, $ 456.68, equals 5 percent of the deficiency determined by him, $ 9,133.63. We assume that even if Woodbury Auto Supply, Inc., filed late its return for its taxable year ending June 30, 1973, it timely paid all of its tax except for the amount of the deficiency.↩
4. The record does not show what became of the engine rebuilding operations.↩
5. It appears that Mr. Coulter did not share in the profits or losses of Woodbury Auto prior to incorporation.↩
6. There is no evidence that all of the assets of Woodbury Auto were transferred to Seaboard and Woodbury Inc., but the parties assume that at least all of the inventory was transferred.↩
7. $ 200,000 / $ 267,007 x $ 200,000 = $ 149,909.↩