GEORGE C. McINGVALE, SR., AND ANGELA B. McINGVALE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McIngvale v. Commissioner
Docket No. 35230-87
United States Tax Court
T.C. Memo 1990-340; 1990 Tax Ct. Memo LEXIS 386; 60 T.C.M. (CCH) 53; T.C.M. (RIA) 90340; July 5, 1990, Filed *386 Decision will be entered for the respondent. D. Kevin McCorkindale *387 , for the petitioners. James R. Turton, for the respondent. COHEN, Judge. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in and an addition to petitioners' Federal income taxes as follows: Addition to Tax
Year
Deficiency
Section 6651
1976
$ 30,445
-
1978
36,900
$ 9,155.75
Petitioners have conceded that they are liable for the addition to tax. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the years in issue. The issue for decision is whether a loss sustained by petitioners is eligible for ordinary loss treatment or is treated as a capital loss in accordance with respondent's statutory notice. FINDINGS OF FACT Some of the facts have been stipulated, and the facts set forth in the stipulation are incorporated in our findings by this reference. Petitioners George C. McIngvale, Sr., and Angela B. McIngvale were husband and wife at all times during the years in issue. At the time the petition in this case was filed, petitioners resided in Texas. By an agreement dated February 21, 1974, George C. McIngvale, *388 Sr. (petitioner) acquired at a cost of $ 209,439 certain rights to market equipment manufactured by Nautilus and to market the name Nautilus in certain territories. The agreement and the subsequent amendments will be referred to hereafter collectively as the "franchise." Nautilus of the Southwest, Inc. (Nautilus Southwest) was a Texas Corporation organized in 1974 for the purpose of marketing Nautilus equipment and marketing the name Nautilus in certain territories pursuant to the franchise. The shares of common stock of Nautilus Southwest were owned equally by petitioners' six children. On May 14, 1974, petitioner assigned to Nautilus Southwest all of his right, title, and interest in and to the franchise. Nautilus Southwest agreed to undertake and perform all present and future obligations of petitioner under the franchise and, additionally, agreed to pay to petitioner Angela B. McIngvale (Mrs. McIngvale) the sum of $ 4,000 a month for the rest of her life, with such payments to commence on or before January 1, 1976 (these amounts are hereinafter referred to as "the annuity"). From 1974 through 1978, petitioner was an employee of Nautilus Southwest. His title was General Manager. *389 In that position, petitioner acted as general manager of the affairs of the corporation and, among other things, was the sales manager; was responsible for sales, management, and employee training; sold equipment for the corporation and drew commissions with respect to such sales; acted as store manager for several of the Nautilus stores; and was responsible for opening several of the Nautilus stores for the corporation. Under the annuity, Mrs. McIngvale received $ 48,000 in 1976 and in 1977 and $ 16,000 in 1978. Petitioners reported those amounts on their Schedules D to their tax returns for 1976 and 1977 as "Proceeds From Sale of Nautilus Franchises" and offset against them an equal amount as their basis in the franchise. On audit of petitioners' returns for 1976 and 1977, the Internal Revenue Service (IRS) concluded that petitioners were required to report the income from the annuity in accordance with the annuity rules of section 72. Accordingly, the IRS computed exclusion ratios and recharacterized the annuity payments received in 1976 and 1977. Of the $ 48,000 received each year, respondent determined that $ 13,789.08 represented short-term capital gain, $ 27,322.92 represented *390 ordinary income, and $ 6,888 represented return of capital. In 1978, petitioners applied the exclusion ratios the IRS had calculated for 1976 and 1977 and reported the $ 16,000 from the annuity as $ 4,596 short-term capital gain, $ 9,108 as ordinary income, and $ 2,296 as return of capital. In 1978, Nautilus Southwest encountered financial difficulties that culminated in bankruptcy. As a result, no further payments were made on the annuity. On their 1978 Federal income tax return, petitioners claimed an ordinary loss of $ 193,367 from worthlessness of their annuity, citing section 165. On amended returns for 1976 and 1977, petitioners claimed an ordinary loss carryback with respect to the worthlessness of the annuity in 1978. Respondent determined that the worthlessness of the annuity during 1978 constituted a capital loss instead of petitioners' claimed ordinary loss. Respondent further disallowed loss carrybacks associated with the claimed ordinary loss. On their Schedule C attached to their 1978 return, petitioners reported $ 15,000 as "Additional -- To Offset any Other Income Which Might be Included by I.R.S." ULTIMATE FINDINGS OF FACT In 1974, petitioners transferred *391 their interest in the Nautilus franchise to Nautilus Southwest in exchange for a private annuity. That private annuity became worthless in 1978. OPINION Procedural Background
In their petition, petitioners alleged that in 1974 they exchanged their interest in Nautilus Southwest for a private annuity. Petitioners further alleged that, upon the bankruptcy of Nautilus Southwest in 1978, the annuity became worthless. Petitioners then claimed an ordinary loss based on the remaining basis in the annuity at the time the payments ceased. On December 28, 1987, respondent filed an answer that generally denied the allegations of the petition. This case was set for trial on September 26, 1988, but was continued generally in order to allow petitioners to retain counsel. On November 28, 1988, petitioners filed a Motion for Leave to Amend Petition, asserting that the receipt of the annuity by Mrs. McIngvale was a closed transaction and thus petitioners were required to report as capital gain in 1974 the excess of the value of the annuity over petitioners' investment in the annuity. Petitioners, however, maintained that the amounts they received in 1976 and 1977 in connection with the *392 annuity reduced their basis and, upon the bankruptcy of Nautilus Southwest in 1978, petitioners were entitled to an ordinary loss to the extent of their basis in the annuity. On December 28, 1988, petitioners' motion was granted and their Amendment to Petition was filed. On January 13, 1989, petitioners filed a second Motion for Leave to Amend Petition, in which they argued for an alternative treatment to their transaction. Petitioners asserted that the transaction at issue falls within section 1253. Section 1253, generally stated, governs the transfer of a franchise, trademark, or trade name. On January 30, 1989, respondent answered, denying generally and for lack of information, all of the allegations in petitioners' first Amendment to Petition. On March 22, 1989, respondent filed his Answer to Second Amendment to Petition, denying the allegations of the Second Amendment to Petition. By order of March 22, 1989, petitioners' Motion for Leave to Amend Petition filed January 13, 1989, was granted and that Amendment to Petition was filed. The case was tried November 2, 1989. At trial, petitioners asserted for the first time that the $ 15,000 reported on their Schedule C as *393 "Additional -- To Offset any Other Income Which Might be Included by I.R.S." should not be included in gross income. The Court concluded at trial that there was insufficient proof to support the claimed reduction in gross income. The return preparer, who allegedly was responsible for the item, was not present at trial. The Court indicated, however, that the parties could move to reopen the record for further stipulation. No such stipulation has been received. On January 22, 1990, the due date of petitioners' original brief, respondent filed a Motion for Leave to File Amendment to Answer to Conform the Pleadings to the Proof under Rule 41(b), and the accompanying Amendment to Answer was lodged. Respondent's motion asserted that petitioner's testimony at trial indicated that the franchise still had a great deal of value in 1978 even after the bankruptcy of Nautilus Southwest and that petitioners did not incur any loss in 1978. Respondent requested leave to amend his answer to allege the foregoing facts and sought to claim an increased deficiency. The Court denied respondent's motion as untimely and because permitting the amendment would prejudice petitioners. Supplemental memoranda *394 were ordered as follows: The only issue before the Court, * * * [after denial of respondent's motion] with respect to this transaction is whether the loss suffered by petitioners in 1978 was ordinary or capital. A logical inference from the evidence is that petitioner-husband transferred his franchise to Nautilus of Southwest in 1974 in exchange for a private annuity payable to Angela B. McIngvale, which annuity was abandoned or became worthless in 1978. This view of the underlying facts was alleged in the original and amended petition but has not been addressed in the briefs by the parties. It is further ORDERED: That on or before May 23, 1990, the parties shall serve on the opposing party and file with the Court their respective supplemental memoranda addressing the applicability of sections 72, 165, 166, 267, and 1253 in determining whether the loss suffered by petitioners in 1978 was capital or ordinary.
The parties filed their respective supplemental memoranda on May 29, 1990. Petitioners' supplemental memorandum ignores the factual context assumed in our order and merely reiterates the arguments in their briefs. Respondent's supplemental memorandum *395 asserts new factual conclusions (e.g., that Mr. McIngvale made a gift to Mrs. McIngvale) and argues that petitioners are not entitled to deduct any loss because of section 267, which disallows losses between related parties. Neither petitioner nor respondent previously addressed section 267. Discussion
Petitioners contend that section 1253 governs the treatment of the loss they sustained on the worthlessness of the annuity. Petitioners argue that the transfer of the franchise to Nautilus Southwest was a license and not a sale or exchange and that the loss that they sustained was not from the worthlessness of the annuity but rather from the worthlessness of their continuing interest in the franchise. Section 1253 for the years in issue provides: (a) General Rule. -- A transfer of a franchise, trademark, or trade name shall not be treated as a sale or exchange of a capital asset if the transferor retains any significant power, right, or continuing interest with respect to the subject matter of the franchise, trademark or trade name.
*396 Section 1253 thus applies in determining whether gain or loss from disposition of a franchise is taxed as capital gain or loss or ordinary income. It does not control the timing of recognition of gain or loss, and it does not, as petitioners contend, require that petitioners' transfer of the franchise be taxed as a license. The evidence in this case establishes that petitioners disposed of their franchise in 1974 in exchange for an annuity. This version of the facts is consistent with petitioners' prior allegations and with the manner in which they reported the transaction on their 1978 return. Even after our post-trial order giving them a further opportunity to reconcile the evidence with their position, they have failed to overcome these admissions. While they argue that they reported the annuity payments in 1978 in accordance with section 72 only because of the position of the IRS taken in the audit for 1976 and 1977, they have not persuaded us that the position was not correct. Because petitioners disposed of the franchise in 1974, section 1253 does not apply to the loss incurred in 1978. Section 72 applies to disposition *397 of the annuity in 1978. Petitioners have cited neither authority nor reason for allowing an ordinary loss on worthlessness of the annuity. Their persistent attempt to recast the facts may be regarded as a concession that there is none. Respondent, on the other hand, responds to our post-trial order with the belated argument that petitioners are not entitled to any loss because, among other things, section 267 precludes deduction of losses incurred in transactions between related parties. The statutory notice and the pleadings up to the time of trial, however, limited the issue to whether the loss was to be treated as an ordinary loss or a capital loss. Respondent's post-trial motion to amend the answer was based on a theory different from his pre-trial and from his most recent theory, and we rejected that as untimely and prejudicial to petitioners. We will not allow respondent to change course again. See Estate of Horvath v. Commissioner, 59 T.C. 551, 556-557 (1973). In summary, petitioners have not established that they incurred an ordinary loss in 1978 rather than a loss subject to section 72. Respondent is precluded at this stage of the proceedings from *398 claiming a deficiency greater than that set out in the statutory notice. Decision will be entered for the respondent.