THOMAS V. PERILLO AND EDITH PERILLO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Perillo v. Commissioner
Docket No. 6391-85.
United States Tax Court
T.C. Memo 1987-26; 1987 Tax Ct. Memo LEXIS 26; 52 T.C.M. (CCH) 1379; T.C.M. (RIA) 87026; January 12, 1987. Peter R. Newman, for the petitioners. Victoria Wilson Fernandez, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined deficiencies in Federal income tax and additions to tax against petitioners [1] as follows: Additions to Tax
Tax Year Ended
Deficiency
[2]Sec. 6651(a)(1) December 31, 1977
$13,521 $3,380 December 31, 1978
6,924 1,673
December 31, 1979
12,888
2,941
December 31, 1980
19,983
3,065
December 31, 1981
18,817
2,982
*28 After concessions, [3] the issue remaining for decision is whether petitioner's farming activity constituted an "activity not engaged in for profit" within the meaning of section 183. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. At the time the petition was filed herein petitioners resided in Melville, New York. Petitioners were married during the years in issue and filed joint returns for these years. Petitioner, a successful businessman, is the president and sole stockholder of Perillo Brothers, a fuel oil delivery company located in Farmingdale, New York. During the years in issue, petitioner devoted the majority of his time to the operation of the fuel oil business. The following table represents selected items of petitioner's income tax reporting for the years in issue: 1977
1978
1979
1980
1981
Income
Wages
$51,785.32 $30,600.00 $84,400.00 $81,600.00 $75,000.00 Interest
6,372.15 6,600.85 9,796.62 17,833.00 19,824.00 Capital Gains
4,115.68 Rents
4,905.00 5,253.92 9,893.00 11,661.00 Total
62,273.15 42,105.85 99,450.54 109,376.00 106,485.00 Farming Loss
(38,409.40)
(26,791.71)
(31,836.49)
(49,191.00)
(38,278.00)
Adjusted Gross
[4] Income $24,606.77 $16,835.75 $69,578.43 $63,642.00 $73,312.00 *29 A brief history of petitioner's farming operations, with great uncertainty in the record as to when various episodes occurred, appears to be as follows: During 1974, petitioner purchased a farm in Gilboa, Schoharie County, New York, consisting of approximately 650 acres, of which approximately 150 to 175 acres were tillable land. The farm was located approximately 175 miles from his residence. At the time he acquired the property it was run as a dairy farm. Petitioner continued to operate it in this fashion as he and another farmer purchased cows which were milked by the farmer. This arrangement ended unsuccessfully for petitioner as the farmer took both his and petitioner's cows and moved them to another farm. Petitioner next bought some beef cattle, reasoning that they would require less maintenance than the dairy cows. He also hired a full-time employee to look after the cattle. Subsequently, he devised a plan to crossbreed the beef cattle in *30 an attempt to produce beefalo -- a cross between beef cattle and buffalo. He felt beefalo would be a more profitable venture as these animals supposedly grew faster, had a lower fat and cholesterol content, and did not need to be fed grain. The plan never fully developed, however, because the two investors he tried to interest in the scheme died. The beef cattle that petitioner had purchased were neglected and consequently developed pinkeye, a disease which can cause the animals to become blind. At this point petitioner decided to put the cattle up for sale. He contacted Dick Johnson, a livestock broker, and entered into an agreement for Johnson to sell the cattle. Johnson transported the cattle to another farm where they were put up for sale. Some of the cattle were apparently sold by Johnson but he withheld the proceeds from petitioner. As a result, petitioner filed an action against Johnson for wrongfully detaining the cattle. On May 5, 1981, a default judgment was entered against Johnson in the amount of $15,097.50 pursuant to the above action. Petitioner next decided to try raising sheep. He bought approximately 100 sheep and hired a person who had attended an agricultural *31 school to manage the flock. After visiting a sheep farm near Chicago, petitioner decided to try to expand the size of his flock. The person managing the sheep felt that she could not handle a larger flock and the employment arrangement was thus terminated sometime during 1981. Some of the sheep later died, and the surviving sheep were sold by petitioner. There is currently no farming activity undertaken on the farm. Petitioner had no experience in farming or farm operations prior to purchasing the farm. His attempts to increase his knowledge of farming were limited to conversing with an "old-time" farmer on farm operations and the Schoharie County Agriculture Department on soil conditions, in addition to occasionally reading various farm publications. He did not take any educational courses in agriculture or veterinary medicine, nor was he a member of the Farm Bureau or any agricultural or cattleman's associations. The farm has had a history of losses since petitioner acquired it. The following chart reflects the claimed financial results of petitioner's farming operations from 1973 through 1981: Real Estate
Total
Total
Taxes
Other
Year
Income
Expenses
Depreciation
and Interest
Expenses
Profit/Loss
1974
$1,094.94
$25,728.21
$7,467.00
$13,336.87
$4,924.34
($24,633.27)
1975
34,591.49
9,708.00
16,013.93
8,869.56
( 34,591.49)
1976
30,857.84
10,267.00
14,339.09
6,251.75
( 39,857.84)
1977
4,750.00
43,159.40
10,567.00
16,020,15
16,572.25
( 38,409,40)
1978
6,605.84
33,397.55
10,897.00
14,599.97
7,900.58
( 26,791.71)
1979
3,831.00
35,667.49
10,450.50
15,171.51
10,045.48
( 31,836.49)
1980
3,861.00
53.052.00
10,776.00
14,994.00
27,282.00
( 49,191.00)
1981
11,184.00
49,462.00
11,116.00
14,571.00
23,775.00
( 38,278.00)
*32 Petitioner did not use the farm for recreational purposes during the years in issue. Respondent disallowed the following claimed losses and investment tax credits relating to petitioner's farm activity: 1977
1978
1979
1980
1981
[5] Schedule F loss $38,409 $26,792 $31,836 $49,191 $38,278 [6] less: interest (8,101)
(5,880)
(8,258)
(8,360)
(4)
[6] real estate taxes (3,170)
(2,114)
(3,082)
(2,773)
(3,383)
Net loss disallowed
$27,138 $18,798 $20,496 $38,058 $34,891 Investment tax credit
$ 942 $ 626 OPINION As a preliminary matter, we must first decide whether an issue involving the substantiation of petitioner's claimed farm expenses is properly before the Court. Petitioner argues that it would be unfair for the Court to consider the issue of substantiation because it was not raised by respondent until his opening statement at trial. Respondent *33 argues that the substantiation issue is not a new issue but was raised in the notice of deficiency. This Court has held on numerous occasions that it will not consider issues that have not been properly pleaded. See, e.g., Markwardt v. Commissioner,64 T.C. 989, 997-998 (1975); Estate of Mandels v. Commissioner,64 T.C. 61, 73 (1975); Frentz v. Commissioner,44 T.C. 485, 491 (1965), affd. per order 375 F.2d 662 (6th Cir. 1967). Whether an issue has been properly raised depends on whether the opposing party has been given fair notice of the matter in controversy. Rule 31(a). We must therefore determine whether petitioner was surprised or put at a disadvantage when the issue of substantiation of the claimed deductions was raised. See Estate of Horvath v. Commissioner,59 T.C. 551, 555 (1973). Respondent did not raise the issue of substantiation until his opening remarks at trial; thus we are of the opinion that it would be unduly prejudicial to petitioner for us now to consider this issue. An examination of the pretrial proceedings will reveal why this result is correct. Respondent informally requested *34 documentation for all books and records maintained by petitioner in connection with his farm activity on August 16, 1985. As petitioner did not provide the requested documents, respondent served petitioner with a formal Request for Production of Documents on November 18, 1985. Petitioner again did not reply to respondent's request; consequently, on December 27, 1985, respondent filed a motion to compel such discovery. This Court ordered petitioner to comply with such request by January 13, 1986. Again, no response was made by petitioner. At the calendar call the Court found petitioner in default, and respondent's motion to impose sanctions was granted insofar as petitioner was prohibited from introducing at trial any of the documents covered by respondent's requests. It was not until after the motion for sanctions was granted, and in his opening statement, that respondent attempted to raise the substantiation issue. Petitioner's opening remarks to this Court and all of his evidence was directed to proving that the farming activity was engaged in for profit.[7] To now allow respondent the additional benefit of being allowed to raise the issue of substantiation -- an issue *35 it would be difficult for him to lose in light of our pretrial ruling -- would be acting unreasonably harshly toward petitioner. While we in no way condone petitioner's pretrial antics, petitioner must nevertheless be given adequate notice of the issues to be tried. Rule 31(a); Estate of Horvath v. Commissioner,supra.
Respondent's attempts to fortify his position by relying on language contained in the notice of deficiency are not persuasive. The notice of deficiency indicates in pertinent part only that: It has been determined expenses incurred in connection with your farming activity was [sic] for an activity not engaged in for profit. Accordingly, under section 183 of the Internal Revenue Code, there may be allowed a deduction for expenses only to the extent of the gross income derived for the *36 taxable years 1977 through 1981. * * * It is further determined that the disallowed deductions are not allowable under sections 162 and 212 of the Code. We are not convinced that this language adequately apprised petitioner that he would be required at trial to substantiate the claimed deductions. To the contrary, a fair reading of the quoted portion of respondent's statutory notice herein would lead petitioner to believe that although the claimed expenses were being disallowed under sections 162 and 212 because they were not incurred in a trade or business nor in an activity entered into for profit, pursuant to section 183, nevertheless no question was being raised that such claimed "expenses" had not, in fact, been "incurred." In fact, respondent allowed the full amount of real estate taxes and interest claimed by petitioner with respect to the farm operation under section 183(b), as our findings show. Nor did respondent make any effort to amend his pleadings so as to include this new factual issue. [8] Under these circumstances we must conclude that it would be improper to consider the issue of substantiation. *37 The issue for decision, then, is whether petitioner's farming activity during the years in issue constituted, under section 183, an "activity not engaged in for profit." [9]
Whether an activity is engaged in for profit turns on whether the taxpayer has a bona fide objective of making a profit. Dreicer v. Commissioner,78 T.C. 642 (1982), affd. without published opinion 702 F.2d 1205 (D.C. Cir. 1983); Engdahl v. Commissioner,72 T.C. 659, 666 (1979); Golanty v. Commissioner,72 T.C. 411, 425-426 (1979), affd. in an unpublished opinion 647 F.2d 170 (9th Cir. 1981). Petitioner's objective is a question of fact to be determined from all the facts and circumstances. Allen v. Commissioner,72 T.C. 28, 34 (1979). *38 The burden of proof is on petitioner. Golanty v. Commissioner,supra at 426, with greater weight given to objective facts than to petitioner's mere statement of intent. Engdahl v. Commissioner,supra at 666; sec. 1.183-2(a), Income Tax Regs.
The regulations under section 183 list the following nine factors which should normally be taken into account in determining whether an activity is engaged in for profit: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation involved in the activity. Sec. 1.183-2(b), Income Tax Regs. These factors are not exclusive and are to be applied according to the unique facts *39 of each case. Accordingly, no one factor, nor a majority of the nine factors, need be considered determinative. Golanty v. Commissioner,supra at 426-427. A review of the entire record in this case persuades us that petitioner has failed to prove that his farming activity was an activity engaged in for profit. The "facts" petitioner relies on in support of his position are based almost entirely on his own self-serving testimony. His testimony was marked by frequent ignorance of names, dates, and figures, and simply does not support the finding herein requested. We think he gave little or no thought as to whether his enterprise would ever be profitable, or whether the large losses that were being sustained annually would even be recouped. With this in mind, we will discuss in more detail the section 183 factors that are meaningfully applied to this case. [10]
*40 The manner in which petitioner carried on his farming activity does not support his claim of profit objective. Petitioner, through his own neglect, was not permitted to introduce documentary evidence to establish that his farm maintained books and records. Thus, we cannot determine whether the books and records, if they existed, were accurately maintained in a businesslike fashion. Petitioner, nevertheless, argues that he continually tried different approaches to turn the farm into a profitable venture. Each of these approaches, however, was conducted in an unbusinesslike manner. The first venture, involving dairy cows, resulted in a loss of all of petitioner's cows. The person caring for the cows apparently commingled them with some of his own stock and removed the whole lot to another farm. The record does not reveal the number of cows involved, whether petitioner attempted to segregate his cows, whether any attempts were made to retrieve the cows, or any other facts consistent with carrying on the farm in a profitable manner. Petitioner's next venture involved beefalo breeding. Again, we were presented with vague and incomplete evidence. Petitioner could not recall when *41 or how many cattle were purchased, nor could he recall the number of cattle that were bred or the time period during which the cattle were kept on the farm. The cattle were ultimately neglected and developed pinkeye. Thus, it can hardly be stated that this change in method was consistent with an intent to improve profitability. Finally, petitioner tried to raise sheep. This activity was similarly carried on in an unbusinesslike fashion. He hired a person to manage the sheep who fed the sheep in the farmhouse and who in petitioner's own words "was more into treating them like pets." Petitioner's testimony concerning the sheep operation was short in duration and lacking in detail. What little evidence is in the record indicates that the activity was unsuccessful and that the sheep either died or were sold. [11]
Although *42 petitioner did try different farming methods, we are not convinced that any of these involved significant attempts to improve the farm's profitability. Each attempt was characterized by a nonchalance incongruous with petitioner's alleged profit motive. There was little, if any, evidence of planning or preparation prior to the time each method was employed. The record additionally does not reveal that after each venture was started, whether petitioner made any changes in the ventures in attempts to make them profitable. In short, petitioner's manner of conducting his farm activity does not reflect a bona fide profit objective and undermines his statements to the contrary. Dunn v. Commissioner,70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980); Jasionowski v. Commissioner,66 T.C. 312, 322 (1976). The obvious lack of expertise of petitioner and his advisors also supports respondent's position and undermines petitioner's. Petitioner made no attempt to show that he made anything more than casual inquiries into running the farm. Petitioner did not have any prior farming experience and his attempts to increase his knowledge were *43 limited to occasionally reading farm publications and discussions with an "old-time" farmer. He was not a member of the Farm Bureau, or any cattleman's associations, nor did he take any educational courses in agriculture. The record similarly does not provide anything more than a sketchy background of those he employed to operate the farm. The record does not, for example, indicate the education or prior farming experience of any of his employees. Nor was any effort made to attempt to show that petitioner or his workers seriously researched livestock raising practices. Rather, petitioner's testimony, as well as the chain of events leading to his decision to abandon each venture, reveals that petitioner knew very little about farming. These facts indicate a lack of profit objective. Turning to the amount of time expended by petitioner in carrying on his activity, we see that petitioner was the president and sole stockholder of a fuel oil delivery company and devoted the majority of his time to this endeavor while he was engaged in farming. At trial petitioner claimed that on average he spent approximately two days per week working on the farm. We did not find this aspect of his *44 testimony to be particularly reliable. The distance between his home and the farm is approximately 175 miles. Petitioner claimed that the drove to the farm and stayed in a motel while he was there. Yet, his income tax returns reflect that he deducted only about $100 for travel expenses for each of the years in issue (with the exception of 1981 when none of these expenses were claimed) and he offered no explanation for this discrepancy. Moreover, we find it difficult to believe that he would have had as many problems with his farming ventures if he had visited the farm as often as he claimed. Although this is not a prerequisite for a finding of a profit objective, petitioner's failure to demonstrate that he devoted substantial amounts of time or energy discovering the problems with his neglected livestock or learning how to remedy the problems encountered suggests a lack of profit objective. Petitioner briefly testified about various other business ventures he had undertaken prior to his livestock farming activity. These include a gas station, a trucking business, an oil business, an ice machine business, an oil well business, and a land purchasing venture. Petitioner stated *45 that the gas station, and trucking and oil businesses were successful, but indicated that the ice machine business was unsuccessful. The record does not reveal the profitability of the other businesses. Again, however, the only evidence presented consisted of petitioner's self-serving statements which need not be accepted as gospel truth. Engdahl v. Commissiner,72 T.C. at 666; Churchman v. Commissioner,68 T.C. 696, 701 (1977). No documents or other evidence which would more objectively support petitioner's position were proffered. Thus, we are not convinced that the limited evidence we have been presented with sufficiently establishes that petitioner was successfully engaged in other activities. Each of the next three factors provided in the regulations -- the taxpayer's history of income or losses with respect to the activity; the amount of occasional profits, if any, that are earned by the activity; and the taxpayer's financial status -- support a finding that the farming activity was not engaged in for profit. Although these factors may not be sufficient to establish lack of profit objective, this Court has indicated that a record of continuing *46 losses is an "important factor" in determining the taxpayer's true intentions. Bessenyey v. Commissioner,45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967), cert. denied 389 U.S. 931 (1967); Golanty v. Commissioner,72 T.C. at 427. During the period the farm was in the operation, 1974 through 1981, it never operated at a profit. In fact, petitioner's average farm loss was in excess of $35,000 per year. It is also significant that during the years in issue (1977-1981) the farm losses (which averaged over $36,000 per year) were used to offset petitioner's substantial income from other sources (i.e., dividends, rents, interest, and his oil business income which averaged $80,000 per year). Petitioner's success in his oil corporation shows that he was obviously familiar with the components necessary to make up a profitable business enterprise. This business acumen seems inconsistent with his willingness to accept farm losses year after year without selling the farm or discontinuing the farming activities.On these facts, his continued losses tend to negate his claim that he held the required profit objective during *47 the years in issue. The one remaining factor, the elements of recreation involved in the activity, does tend to support petitioner's position. It does not appear from the record that petitioner used the farm for personal pleasure. This is but one factor slightly in his favor and it does not overcome the weight of the factors supporting respondent's position. In sum, when the facts of this case are examined in light of the factors provided in the regulations, we conclude that petitioner has failed to carry his burden that he incurred the farm losses at issue herein with a bona fide objective of making a profit from farming operations. To reflect the foregoing, Decision will be entered under Rule 155.
[12]
*48 Footnotes
1. Petitioner Edith Perillo is a party to this action solely by reason of filing a joint return with petitioner Thomas V. Perillo during the years in issue. For that reason we will hereinafter refer to Thomas V. Perillo as petitioner. ↩
2. All statutory references are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
3. At trial, respondent conceded that the sec. 6651(a)(1) addition is not applicable for the 1977 taxable year and petitioners conceded that the addition is applicable for the 1978, 1979, 1980, and 1981 taxable years.↩
4. The subtraction of the farming loss from the total income as reported in the table does not exactly equal the adjusted gross income for these years due to the exclusion of certain minor items not relevant to our discussion.↩
5. These amounts reflect allowances by respondent for deductions for interest and real estate taxes up to the amount of gross income for each year. ↩
6. These amounts reflect additional allowances of deductions by respondent, under sec. 183(b)(1)↩.
7. We realize that one of the factors to be considered in determining whether an activity is engaged in for profit is whether the taxpayer maintained complete and accurate books and records. Sec. 1.183-2(b)(1), Income Tax Regs.↩ Obviously, in view of our pretrial order, petitioner was not permitted to present evidence on this point.
8. Whether a deduction is adequately substantiated and whether an activity is engaged in for profit are two separate issues requiring the presentation of different evidence. See Estate of Horvath v. Commissioner,59 T.C. 551, 555 (1973). Although the regulations provide that a factor to be considered in making a section 183 determination is whether the taxpayer maintained adequate books and records, sec. 1.183-2(b)(1), Income Tax Regs., the regulations also provide that "No one factor is determinative in making this determination." Sec. 1.183-2(b), Income Tax Regs. Moreover, this Court has found farming activities to be engaged in for profit even when the taxpayer's books and records were "deficient." See, e.g., Fisher v. Commissioner,T.C. Memo. 1980-183; see also Dell v. Commissioner,T.C. Memo. 1984-556; Dennis v. Commissioner,T.C. Memo. 1984-4. It is also noteworthy that in a somewhat similar context the Court has refused to consider new theories raised for the first time on brief "even where the Commissioner's new theories arise under the same Code section as did the theories upon which the case was tried." Johnsen v. Commissioner,83 T.C. 103, 120-121 (1984), revd. and remanded on another issue 794 F.2d 1157 (6th Cir. 1986) (emphasis added). For all of these reasons we are of the opinion that respondent's position, that the issue of substantiation was raised by the bare allegation of sec. 183↩, is without merit.
9. Sec. 183(a) provides that "if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section." Sec. 183(c)↩ defines an "activity not engaged in for profit" as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212."
10. Petitioner has apparently treated his claims of holding the farm property for appreciation and of holding the property for raising livestock as elements of a single activity, namely, farming. See Keelty v. Commissioner,T.C. Memo. 1984-173; Sec. 1.183-1(d)(1), Income Tax Regs. ("Generally the Commissioner will accept the characterization by the taxpayer of several undertakings either as a single activity or as separate activities"). Although respondent's regulations deal specifically with the separate-versus-single-activity issue where land is "purchased or held primarily with the intent to profit from increase in its value, and the taxpayer also engages in farming" and, in this context requires the farming operation to stand on its own feet (Sec. 1.183-1(d)(1), Income Tax Regs.), the regulations do not deal specifically with the situation where the appreciation element is involved in determining the profit objective for a farming operation. Keelty v. Commissioner,supra.Where the decided cases have suggested that the single-activity concept applies in the latter situation they have taken the anticipated profit from the appreciation of the property into account only as one of several elements in deciding whether the requisite profit motive exists. See, e.g., Engdahl v. Commissioner,72 T.C. 659, 668 n. 4 (1979); Fields v. Commissioner,T.C. Memo. 1981-550. Whether such anticipated profit can, in and of itself, determine that a farming operation has a profit motive remains doubtful. See Keelty v. Commissioner,supra;LaMusga v. Commissioner,T.C. Memo. 1982-742; cf. Jasionowski v. Commissioner,66 T.C. 312, 323 (1976) ("If the anticipation of selling the house at a profit were sufficient to establish that the house was held with a profit making intent, rare indeed would be the homeowner who purchased a home several years ago who could not make the same claim"). See also Boddy v. Commissioner,T.C. Memo. 1984-156, affd. without published opinion 756 F.2d 884 (11th Cir. 1985). In any event, in the instant matter, petitioner has not presented sufficient evidence to persuade us that he purchased the farm solely for appreciation or that appreciation is an element we should take into account. His attempts to provide evidence as to this fact consisted solely of his own statement that he bought the farm reasoning that it would go up in price as a result of its subdivision potential. No plans, expert opinions, or documents which would more objectively prove these facts were offered. As such, petitioner has failed to prove that the appreciation factor supports his position.↩
11. Petitioner also testified that at one point he tried to "set the place up as a shelter." Apparently, he felt that it might be profitable to sell shares in his livestock to investors. This venture never came to fruition and very little evidence was offered to substantiate this claim. We are not convinced that this limited evidence supports his position.↩
12. Although we have found that petitioner's farming activity did not constitute an activity engaged in for profit he is nevertheless allowed certain deductions pursuant to sec. 183(b). These deductions were properly allowed by respondent in calculating the deficiencies for the years in issue.Our finding herein also makes it clear that petitioner was not entitled to the investment tax credits for 1977 and 1980. Finoli v. Commissioner,86 T.C. 697, 744-745↩ (1986).