DIANE W. WOLF, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wolf v. Commissioner
Docket No. 5779-90
United States Tax Court
T.C. Memo 1994-93; 1994 Tax Ct. Memo LEXIS 94; 67 T.C.M. (CCH) 2327; March 2, 1994, Filed *94 Decision will be entered under Rule 155. For petitioner: David Rodman Cohan and Lawrence J. Macklin.
For respondent: Elizabeth S. Henn. WOLFE
WOLFE
MEMORANDUM OPINION WOLFE, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181 and 182. [1]
Petitioner filed her income tax return for 1982 as head of household and reported a net operating loss for that year. Petitioner filed a Form 1045, Application for Tentative Refund, claiming an overpayment for 1979 as a result of the alleged net operating loss in 1982. The application was tentatively allowed and the resulting overpayment for 1979 was refunded to petitioner. Subsequently, on audit of petitioner's 1982 income tax return, respondent decreased petitioner's net operating loss. By statutory notice respondent determined a deficiency of $ 8,195 *95 in the 1979 Federal income tax return of petitioner and Morris Wolf. The deficiency for the taxable year 1979 results from the disallowance of part of the net operating loss carryback from the taxable year 1982 to 1979. Although the deficiency is for the year 1979, the controversy between the parties stems from events which occurred in 1982. After concessions, the issues for decision with respect to the 1982 taxable year are: (1) Whether petitioner's yacht chartering activities constituted an "activity not engaged in for profit" within the meaning of section 183; (2) whether petitioner is entitled to an interest deduction under section 163(a) in the amount of $ 14,557; (3) whether petitioner is entitled to claimed deductions for casualty losses under section 165(c); and (4) whether petitioner is entitled to a bad debt deduction in the amount of $ 100,000 with respect to a hypothecated savings account. At trial, petitioner renewed her previously denied motion for summary judgment as to whether she sustained a casualty loss with respect to the unauthorized disbursement of funds from a bank account. Her motion again is denied for reasons stated in this opinion. Respondent also *96 raised the question whether petitioner is entitled to any refund if there is an overpayment for the 1979 taxable year. Because there is no overpayment by petitioner for 1979, we do not consider this issue. Some of the facts have been stipulated and are so found. Petitioner resided in Owings Mill, Maryland, at the time she filed her petition. Petitioner married Morris Wolf in December of 1976. They separated in May of 1982 and divorced in 1985. Petitioner is a certified public accountant. She received a degree in mathematics from the University of Maryland in 1975 and a masters of science in taxation from the University of Baltimore in 1983. She also completed 18 credit hours at the University of Baltimore School of Law. All the disputed items on petitioner's 1982 Federal income tax return are deductions claimed by petitioner. Deductions are strictly a matter of legislative grace, and petitioner bears the burden of proving entitlement to any deduction claimed on the return. INDOPCO, Inc. v. Commissioner, 503 U.S.    , 112 S. Ct. 1039 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Respondent *97 bears the burden of proof, however, with respect to any new matter. Rule 142(a). For convenience and clarity, the findings of fact and applicable law are discussed together with respect to each issue. Issue 1: Yacht Chartering Activity
Throughout their marriage petitioner and Morris Wolf owned pleasure boats located in the United States. None of the boats owned by petitioner and her former spouse prior to 1981 were used for charter or business purposes. Petitioner and her former spouse frequently traveled to the south of France on their vacations. On a vacation in France during the summer of 1980, they attempted to charter a boat, but none was available. Petitioner and Morris Wolf then began investigating the prospect of purchasing a yacht to be sailed on the Mediterranean Sea and the possibility of making such a boat available for charter. During their 1980 vacation in France, petitioner and Morris Wolf met with charter boat operators, boat brokers, operators of marinas, captains, and others involved in the charter business to learn about yacht chartering. They also hired an attorney in France. Upon returning from vacation, petitioner and Morris Wolf discussed the *98 economics of yacht ownership with their business attorney, boat brokers who chartered boats in the Mediterranean, and others in the United States. Petitioner prepared financial projections with respect to a potential charter business, after consulting various experts. In the spring of 1981, petitioner and Morris Wolf purchased the yacht Diane and hired a captain. Petitioner and Morris Wolf purchased the boat using funds from the refinancing of a boat they owned in the United States and a promissory note in the amount of $ 100,000 from Baltimore Savings and Loan Association (BSL). The note from BSL was issued to Morris Wolf. BSL required the hypothecation of one of petitioner's savings accounts as a prerequisite to issuance of the note. The promissory note and hypothecation agreement are discussed in detail under Issue 4, infra. Petitioner and Morris Wolf opened a bank account in France and established credit at various marinas and ship chandler stores in southern France. Petitioner and her former spouse advertised the Diane for charter in 1981. They placed an advertisement in the International Herald Tribune and sent letters to various travel agents in the *99 United States concerning the yacht's availability for charter. The vessel was insured for charter purposes. Nevertheless, in July of 1981, petitioner and Morris Wolf signed an affidavit for the United States Consulate indicating that the Diane would only be used for pleasure. Petitioner and Morris Wolf used the Diane for a few weeks during the summer of 1981. During 1982, petitioner did not use the vessel. The yacht was placed in service for charter at the end of the summer of 1981. The chartering of the yacht in 1981 resulted in $ 7,000 revenue and a substantial net loss. It was not chartered in 1982 or in any year subsequent to 1982. During 1981 and 1982, financial records of revenue and expense related to the vessel were kept by Morris Wolf's secretary at his office. At the end of 1981, petitioner and Morris Wolf listed the yacht for sale. A marital property agreement entered into on March 14, 1982, stated, in part, that the vessel had been put up for sale and also how the sale proceeds would be divided between petitioner and Morris Wolf. Both petitioner and Morris Wolf claimed the Diane as a business loss on their respective 1981 and 1982 Federal income *100 tax returns. Respondent disallowed petitioner's claimed business loss. Morris Wolf's treatment of the expenses related to the Diane are not before this Court. Petitioner contends that respondent may not rely upon any basis except the doctrine of res judicata to deny petitioner's claimed business loss. Petitioner argues that respondent's agent relied upon res judicata in his report, and respondent failed specifically to deny or admit certain allegations in petitioner's petition to the Tax Court. [2] Alternately, petitioner contends that the issue is new matter so that the burden of proof shifts to respondent under Rule 142(a). Respondent may rely upon bases other than res judicata to disallow petitioner's claimed yacht chartering business loss. The *101 reasons for disallowance of the yacht expenses set forth in the report of respondent's agent are not binding upon respondent. We will not look behind the deficiency notice to examine respondent's reasoning in disallowing those losses. Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974). In addition, respondent has not admitted to relying upon the doctrine of res judicata in determining that petitioner was not entitled to the yacht losses. Under Rule 36(c), all material allegations set out in the petition and not expressly admitted or denied in the answer are deemed to be admitted. Respondent denied generally all allegations of the petition not specifically admitted, qualified, or denied. The allegations were, therefore, expressly denied. The burden of proof with respect to the deductibility of the yacht losses remains with petitioner if respondent merely clarifies or develops the original determination without being inconsistent or increasing the amount of the deficiency; however, the burden may shift to respondent if a new issue or matter, requiring the introduction of different evidence, is presented. Achiro v. Commissioner, 77 T.C. 881, 890 (1981); *102 Estate of Horvath v. Commissioner, 59 T.C. 551, 555 n.2 (1973). Respondent determined that petitioner was not entitled to any business deductions with respect to the yacht chartering activities. Throughout the protracted pretrial stages of this case both parties have disputed the issue of whether petitioner's yacht chartering activities constituted an "activity not engaged in for profit" within the meaning of section 183. Application of section 183 to petitioner's yacht activities is not a new issue or new matter. Accordingly, petitioner bears the burden of proof with respect to this issue. Respondent does not contest the amount of the deductions claimed by petitioner in 1982, except interest and depreciation, or that they were in fact incurred with respect to the Diane. Rather, she asserts that petitioner's chartering activity was an activity not engaged in for profit during the taxable year at issue. An "activity not engaged in for profit" is defined in section 183(c) as an activity other than one with respect to which deductions are allowable under section 162 or paragraphs (1) or (2) of section 212. If an activity is not engaged in for *103 profit, section 183(b)(1) allows only those deductions which are not dependent on a profit motive. Section 183(b)(2) allows all other deductions which would be allowable if the activity were engaged in for profit, but only to the extent that gross income from the activity exceeds the deductions allowable under section 183(b)(1). Deductions are allowable under section 162 for expenses of carrying on an activity that constitutes the taxpayer's trade or business if those expenses are ordinary and necessary to the conduct of the trade or business. Section 212 allows the taxpayer to deduct expenses incurred in connection with an activity engaged in for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income. A taxpayer must show that he engaged in an activity with an actual and honest objective of making a profit in order to deduct expenses of the activity under either section 162 or 212. Beck v. Commissioner, 85 T.C. 557, 569 (1985); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); *104 sec. 1.183-2(a), Income Tax Regs. Although a reasonable expectation of profit is not required, the taxpayer's profit objective must be bona fide. Hulter v. Commissioner, 91 T.C. 371, 393 (1988). "Profit" in this context means economic profit, independent of tax savings. Drobny v. Commissioner, 86 T.C. 1326, 1341 (1986). Whether a taxpayer had an actual and honest profit objective is a question of fact to be resolved from all relevant facts and circumstances. Hulter v. Commissioner, supra; Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). Greater weight is given to objective facts than to a taxpayer's statement of intent. Beck v. Commissioner, supra at 570; Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986); sec. 1.183-2(a), Income Tax Regs. After reviewing the entire record before us, we conclude that petitioner has failed to carry *105 her burden of proving that profit was the objective of the boat chartering activity. Despite petitioner's and her former spouse's considerable boating experience, they had no expertise in the business of yacht chartering. The main part of their investigation into the business of chartering a yacht in France consisted of traveling on the yacht and speaking to the operators of marinas and other boats. Prior to their purchase of the yacht, petitioner and Morris Wolf had wished to sail the Mediterranean on a yacht but had never been able to do so. When their marriage began to dissolve, petitioner and Morris Wolf listed the yacht for sale. A strong element of personal pleasure existed with respect to their purchase of Diane. Petitioner contends that the most important factor evidencing a profit motive with respect to a chartered vessel business is the speed with which the taxpayer ceases operations once he determines that the chartered vessel business will not be profitable. Petitioner cites Feldman v. Commissioner, T.C. Memo. 1988-126, in support of her position. Petitioner's reliance on Feldman is misplaced. In holding in Feldman that *106 petitioner's primary motivation was not pleasure use, the Court relied upon the fact that in addition to the yacht in issue petitioner had another boat which was available for pleasure use in the same locality as the yacht. Also, the Court noted that Mr. Feldman's testimony concerning investigation of profit possibilities was credible and uncontroverted, and that his explanation of his profit objective was corroborated by other evidence. In this case petitioner's primary motivation was her own personal pleasure. Her abandonment and sale of the yacht in 1983 supports this motivation. By the time of the yacht's sale, petitioner's relationship with Morris Wolf had deteriorated, and there no longer was any possibility that they would use the yacht to vacation together. Not only was the couple legally separated, but petitioner had initiated numerous law suits against Morris Wolf. Moreover, petitioner's testimony about her profit objective is not convincing and is not corroborated by any significant other evidence. We conclude that, even though petitioner and Morris Wolf might have been quite willing to make a profit, their actual objective in acquiring the Diane was not profit. *107 Instead, their purpose was personal pleasure. Their motive for considering leasing was to defray a portion of the cost of a yacht they wished to own for their joint personal enjoyment. Petitioner and her former spouse did not engage in a charter activity during the year in question here with an actual and honest objective of making a profit. Chartering a yacht to others in order to afford to keep it for one's personal enjoyment through tax savings is not the same as having a profit objective. See Antonides v. Commissioner, 893 F.2d 656, 660 (4th Cir. 1990), affg. 91 T.C. 686, 697 (1988); Carter v. Commissioner, 645 F.2d 784, 786 (9th Cir. 1981), affg. T.C. Memo. 1978-202; Martin v. Commissioner, 50 T.C. 341, 364 (1968). Petitioner is limited to those deductions which are allowable regardless of whether the chartering activity was engaged in for profit. Since the charter activity did not generate any gross income during 1982, no deductions are allowable under section 183(b)(2). Interest expenses are deductible under sections 183(b)(1) *108 and 163(a). Issue 2: Interest Deduction
Interest paid on an indebtedness within a taxable year is allowed as a deduction under section 163(a) without reference to whether the indebtedness was incurred with a motivation for profit. [3] Petitioner claimed an interest expense with respect to the yacht chartering activity in the amount of $ 14,557 on Schedule C of her 1982 Federal income tax return. Petitioner asserted that this amount was one-half of the total interest expense for 1981 related to a loan which covered both of the Wolfs' boats. On his 1982 return Morris Wolf claimed an interest deduction in the amount of $ 13,106 with respect to the boat loan. This amount represented the entire amount of interest related to the boat. Both petitioner and Morris Wolf filed their tax returns in accordance with petitioner's position that she was an equal partner in the yacht chartering activity. As such, she is entitled to one-half of the interest expense related to the boat. In the notice of deficiency, respondent disallowed the entire loss claimed on petitioner's Schedule C but allowed petitioner a Schedule A interest deduction in the amount of $ 6,553, equal to one-half of *109 the amount claimed on Morris Wolf's 1982 Federal income tax return as interest on the boat loan. Petitioner bears the burden of proof with respect to the proper amount of the interest deduction. Rule 142(a). Petitioner's testimony concerning the amount of her interest deduction for 1982 is vague. She testified that she arrived at the $ 14,557 figure for interest expense related to the yacht by calling the bank. The bank allegedly told her that $ 25,802 had been paid on the boat loan in 1982 and she claimed one-half of that amount, $ 12,901, as interest expense. Petitioner introduced no documentary evidence concerning the amount of interest paid on the boat loan. Generally, taxpayers are required to substantiate claimed deductions and credits by maintaining the records needed to establish the amount of such items. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. Petitioner *110 could not identify the source of the $ 1,656 of interest expense claimed in addition to the amounts related to the yacht. Petitioner has failed to carry her burden with respect to the amount of her interest deduction. Accordingly, petitioner is allowed as an interest deduction for 1982 under section 163(a), only $ 6,553, as determined by respondent in the statutory deficiency notice. Issue 3: Alleged Casualty Losses
Section 165(a) allows a deduction for "any loss sustained during the taxable year and not compensated for by insurance or otherwise." For individuals, however, the deduction under section 165(a) is limited to losses incurred in a trade or business or in any transaction entered into for profit, or losses arising from fire, storm, shipwreck, or other casualty, or from theft. Sec. 165(c). Petitioner contends that she sustained deductible casualty losses with respect to (1) the release of funds without her signature from a joint bank account; and (2) damage to her personal automobile. Each disputed casualty loss is discussed separately below. a. Release of Funds from Joint Bank Account
In January of 1979, petitioner and Morris Wolf entered into an agreement *111 to resolve a dispute as to whether Morris Wolf or petitioner was entitled to certain proceeds from the sale of a partnership interest held by petitioner and Morris Wolf. The agreement provided that funds were to be deposited into a bank account subject to the joint order of the parties and were to be applied towards the cost of acquiring land and construction of residential improvements at 11104 Verdant Road, Owings Mill, Maryland, titled solely in the name of Diane Wolf. Pursuant to the agreement, petitioner and Morris Wolf each deposited $ 50,000 of their respective share of the proceeds with BSL. The deposit was in the form of a note from BSL to Morris Wolf and petitioner as tenants in common. The payment of the note was subject to the joint order of both payees on demand. The money deposited with BSL was withdrawn in five payments from February to June 1979. The checks were made payable to Morris Wolf. Although the $ 100,000 note required the signatures of both Morris Wolf and petitioner for any withdrawals to be made, the bank erred and allowed the money to be withdrawn without the signature of petitioner. Morris Wolf used the funds withdrawn from the account in accordance *112 with the agreement. Petitioner sustained no damage from her former husband as a result of the bank's error in allowing the funds to be withdrawn from the account, as she specifically admitted. In May of 1982, petitioner sued BSL with respect to the withdrawal of funds by Morris Wolf without the authorization of petitioner. BSL brought Morris Wolf into the case as a third party defendant. In March of 1986 that suit was resolved when the Circuit Court of Baltimore City issued an opinion granting a motion for summary judgment for the defendants. In December of 1984, petitioner filed an action in the Circuit Court for Baltimore County against Morris Wolf regarding the $ 100,000 withdrawn from the account. This case was tried and decided by a jury, which rendered its opinion that Morris Wolf did not breach the January 1979 agreement, that the funds were applied toward the cost of acquiring the land and construction of residential improvements at 11104 Verdant Road, and that the funds were used in accordance with the agreement of the parties. Petitioner appealed the decision of the court but withdrew her appeal on August 25, 1986. Petitioner did not claim a loss on her 1982 Federal *113 income tax return with respect to the erroneous release of funds. In her petition, however, she claimed that she sustained a $ 50,000 casualty loss as the result of the erroneous release of funds by BSL. In the statutory notice of deficiency respondent characterized the release of funds as a nonbusiness bad debt and did not allow any deduction for the erroneous release of funds. In pretrial proceedings and consistently thereafter, respondent has asserted that petitioner did not sustain any loss with respect to the release of funds. Petitioner is not allowed a deduction under section 165 unless she has sustained a loss. Sec. 165(a). Petitioner contends that the only issue in controversy with respect to the erroneous release of funds from the joint bank account is the characterization of the loss because respondent either admitted that a loss occurred or did not properly raise the issue in the pleadings. Alternately, petitioner contends that the issue is new matter so that the burden of proof with respect to the issue shifts to respondent under Rule 142(a). The pleadings clearly show that respondent did not admit that a loss occurred with respect to the release of funds from *114 the joint account. We denied petitioner's motion for summary judgment on this issue and also deny her renewal of that motion. Respondent did not expressly admit that petitioner sustained a loss, and respondent generally denied all allegations of the petition which were not expressly admitted or denied. In the notice of deficiency respondent did not allow any deduction with respect to the release of funds. Petitioner introduced no evidence to support her contention that respondent admitted that petitioner sustained a loss as the result of the release of funds to Morris Wolf. Respondent properly raised the issue of whether petitioner sustained a loss with respect to the release of funds from the joint bank account. It is well settled that respondent's determination may be affirmed for reasons other than those assigned in the notice of deficiency. Estate of Horvath v. Commissioner, 59 T.C. 551, 555 (1973); Estate of Finder v. Commissioner, 37 T.C. 411, 423 (1961). Under Rule 31(a) in this case, respondent was required to provide petitioner fair warning of the basis for disallowance on which respondent relies. Fair *115 warning in this context means that a taxpayer must not have been prejudiced or harmed in her ability to prepare for trial. William Bryen Co. v. Commissioner, 89 T.C. 689, 709 (1987); Rubin v. Commissioner, 56 T.C. 1155, 1163 (1971), affd. 460 F.2d 1216 (2d Cir. 1972). Petitioner was not surprised or disadvantaged by respondent's argument that petitioner did not sustain a loss as the result of the bank's erroneous release of funds from the joint account. The record clearly shows that petitioner was aware of respondent's position that petitioner had not suffered any loss as a result of BSL's release of funds to Morris Wolf for use in constructing a home titled solely in petitioner's name. Petitioner obviously was well aware that in two proceedings the Maryland courts had held that she had suffered no loss in that transaction. Petitioner's arguments based on claimed pleading errors and alleged admissions are of no merit and are rejected. Petitioner's alternate contention concerns the burden of proof as to whether petitioner sustained a loss with respect to the release of funds from the joint *116 account. Respondent determined that petitioner was not entitled to any Federal income tax benefit by reason of the release of joint funds to Morris Wolf. Throughout the extended pretrial phases of this case the proper treatment of the erroneously released funds has been in issue. Respondent did not introduce a new issue by asserting that petitioner sustained no loss with respect to the release of funds. Therefore, petitioner retains the burden of proof with respect to whether she sustained a loss. Moreover, on this issue the evidence is so overwhelming that the result would be the same even if respondent had the burden of proof. Petitioner did not introduce any evidence that she had suffered a loss with respect to the bank's error in releasing the funds to Morris Wolf. Petitioner admitted that she sustained no damage from Morris Wolf as a result of the bank's error in allowing their money to be withdrawn from the bank account, and petitioner did not show that she suffered any damage from BSL as a result of its error. We hold that petitioner did not sustain a loss with respect to the erroneous release of funds from the joint bank account. A loss must be sustained by the taxpayer *117 for section 165 to permit a deduction. Sec. 165(a). Accordingly, respondent is sustained on this issue, and petitioner is not allowed a casualty loss deduction with respect to the release of funds. b. Automobile Casualty Loss
In June of 1982, petitioner took her automobile, a 1977 Jaguar XJS, to a service station for routine maintenance. After petitioner left the station, the automobile "locked up" or seized due to extreme engine temperature. The automobile was towed back to the service station, which could not repair it, then towed to The Motor Coach Ltd. for repair. Personnel at The Motor Coach Ltd. advised petitioner that the damage to her car was the result of extreme engine temperature, and she concluded that the service station must have failed to replace vital engine fluids. Petitioner paid The Motor Coach Ltd. $ 9,353.95 for repairs to the Jaguar. Petitioner did not try to recover damages from the service station. Petitioner claimed total casualty losses in the amount of $ 15,575 on her 1982 Federal income tax return. This total consisted of three claimed casualties in the following amounts in excess of the statutory minimum: (1) A theft loss in the amount *118 of $ 1,700; (2) an embezzlement loss of an insurance check in the amount of $ 2,975; and (3) a casualty loss with respect to petitioner's automobile of $ 10,900. Respondent disallowed $ 7,146 of petitioner's total claimed casualty losses. The notice of deficiency does not specify which losses were disallowed, but in her answer respondent admitted to allowing a loss in the amount of $ 5,446. While respondent's computation of the deficiency determination is not entirely clear from the record, we conclude that in the statutory notice respondent allowed a casualty loss with respect to the automobile in the amount of $ 5,446. At trial respondent argued that the damage to petitioner's automobile was not the result of a casualty but was caused by normal wear, so that no deduction is allowable as a result of the damage. Petitioner contends that the notice of deficiency and the pleadings do not raise the issue of whether a casualty loss occurred with respect to the damage to the automobile and, therefore, the issue was not timely raised and we should not consider any evidence concerning the occurrence of a casualty. Alternately, petitioner contends that respondent should bear the burden *119 of proof with respect to the issue of whether or not a casualty occurred because that issue is new matter under Rule 142(a). Rule 31(a) provides that the purpose of the pleadings is to give the parties and the Court fair notice of the matters in controversy. We must determine whether surprise and substantial disadvantage are present before determining which party bears the burden of proof with respect to a particular theory. Estate of Horvath v. Commissioner, 59 T.C. at 555. If surprise and substantial detriment are found, then the theory need not be heard by this Court. Id.
Petitioner was not surprised or disadvantaged by respondent's assertion that a casualty did not occur. Petitioner's conduct was inconsistent with a claim that she was unaware of respondent's theory. Petitioner's trial memorandum, which was filed before trial, fully addressed the issue. Nevertheless, because respondent's present theory results in an increased deficiency, respondent bears the burden of proof with respect to respondent's claimed increase in the amount of casualty loss disallowance. Rule 142(a). In addition, respondent bears the burden of proof with respect *120 to all factors concerning the automobile casualty loss, except the amount of the loss, because respondent's assertion at trial that a casualty did not occur is inconsistent with her position in the deficiency notice allowing a casualty loss with respect to petitioner's automobile damage. Petitioner retains the burden of proof only with respect to the amount of the claimed casualty loss disallowed in the deficiency notice. See Rule 142(a). There is no question that petitioner sustained a loss from the seizure of her automobile's engine. Because petitioner is an individual and the loss was not incurred in a trade or business or a transaction entered into for profit, petitioner is not entitled to a deduction unless she sustained the loss as a result of a casualty or theft. Sec. 165(c). Petitioner seeks a deduction for the damage to her automobile as an "other casualty" under section 165(c)(3) in the amount of the cost of repairs to the vehicle. Respondent argues that the automobile damage is not a casualty loss contemplated in the definition of "other casualty" in section 165(c)(3). Even if the loss is within that definition, respondent contends that the amount petitioner paid *121 to repair the automobile is excessive, and the amount deductible, if any, should be limited to the difference between the automobile's fair market value before the incident and its fair market value after the incident. As noted above, respondent bears the burden of proving that the seizure of petitioner's automobile engine was not a casualty. The term "casualty" is not defined in the Code or the regulations. The question whether a deductible casualty has occurred is a question of fact for resolution with respect to the circumstances of each case. White v. Commissioner, 48 T.C. 430, 437 (1967). The term "other casualty" means something akin to a fire, storm, or shipwreck that requires "a sudden, unusual, unexpected and accidental force or agency to be applied against the property." Coleman v. Commissioner, 76 T.C. 580, 589 (1981). This Court has defined a casualty as "the complete or partial destruction of property resulting from an identifiable event of a sudden, unexpected, or unusual nature." Farber v. Commissioner, 57 T.C. 714, 718 n.3 (1972). Respondent asserts that the damage to *122 petitioner's automobile engine was due to the progressive deterioration of property through a steadily operating cause, and thus not sudden and not deductible. See Smith v. Commissioner, 608 F.2d 321 (8th Cir. 1979) affg. T.C. Memo. 1979-82; Fay v. Helvering, 120 F.2d 253 (2nd Cir. 1941) affg. 42 B.T.A. 206 (1940); Maher v. Commissioner, 76 T.C. 593 (1981), affd. 680 F.2d 91 (11th Cir. 1982). A loss triggered by a negligent act may properly be deducted under section 165(c)(3). See Hayutin v. Commissioner, T.C. Memo. 1972-127, affd. 508 F.2d 462 (10th Cir. 1974); sec. 1.165-7(a)(3), Income Tax Regs. In addition, negligent workmanship can be the basis for a deduction under section 165(c)(3). Marx v. Commissioner, T.C. Memo. 1991-598. Petitioner testified that the damage to her automobile engine was caused by the negligent work of the mechanic at the service station. On brief, respondent merely asserted that petitioner *123 had not met her burden of proof. Respondent, however, bears the burden of proof with respect to this question. Respondent introduced no evidence to satisfy her burden of proof or rebut petitioner's uncontroverted testimony. The evidence shows that the damage was caused by the negligence of the auto mechanic and that the circumstances here are different from those in Smith v. Commissioner, supra, where there was an oil leak, a history of defects in the automobile and other evidence supporting the conclusion that the damage was the result of gradual deterioration. Accordingly, we find that the damage to petitioner's automobile was caused by a casualty as that term is used in section 165(c)(3). For a loss caused by a casualty to be deductible, the loss must not have been compensated for by insurance or otherwise. Sec. 165(a). If a casualty occurs and in the year of such casualty, there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165, until it can be ascertained with reasonable *124 certainty whether or not such reimbursement will be received. Sec. 1.165-1(d)((2)(i), Income Tax Regs. Respondent also bears the burden of proof with respect to this question. Petitioner claims that she was reasonably certain that she would not receive reimbursement from the allegedly negligent service station because the station was sold shortly after it had serviced petitioner's automobile, and counsel advised her that efforts to collect were likely to be futile. Respondent introduced no evidence to rebut petitioner's testimony and instead relied upon the belief that petitioner had not carried her burden of proof. On this record, we hold that petitioner's loss was not compensated by insurance or otherwise. We now turn to the question of the amount which petitioner may properly deduct as a casualty loss. Petitioner bears the burden of proof with respect to the amount of the claimed casualty loss disallowed in the deficiency notice. Rule 142(a). On her 1982 Federal income tax return, petitioner claimed an automobile casualty loss in the amount of $ 10,900. In the notice of deficiency, respondent allowed a casualty loss for the automobile in the amount of $ 5,446. Petitioner *125 submits that the total cost of repairs should be deductible. Section 1.165-7(a)(2)(ii), Income Tax Regs., provides: (2) Method of valuation. * * * (ii) The cost of repairs to the property damaged is acceptable as evidence of the loss of value if the taxpayer shows that (a) the repairs are necessary to restore the property to its condition immediately before the casualty, (b) the amount spent for such repairs is not excessive, (c) the repairs do not care for more than the damage suffered, and (d) the value of the property after the repairs does not as a result of the repairs exceed the value of the property immediately before the casualty.
The repairs to petitioner's automobile did not restore the automobile to its condition immediately before the casualty. Petitioner testified that after the incident, the car never ran while she owned it. Petitioner introduced no evidence that the amount spent on repairs was not excessive. In fact, she sued The Motor Coach Ltd. concerning the repairs claiming that she never gave them permission to do all those repairs. Petitioner also introduced no evidence that the repairs which The Motor Coach Ltd. did to the automobile were only to *126 repair damage caused by the engine's seizure. In this situation, the cost of repairs is not convincing evidence of the amount of petitioner's casualty loss. Generally, the amount of a casualty loss is the difference between the fair market value of the property immediately before the casualty and the fair market value of the property immediately after the casualty. Sec. 1.165-7(b)(1)(i), Income Tax Regs. Although petitioner claimed that the fair market value of the Jaguar before the engine lock up was $ 12,000 on her 1982 Federal income tax return, she conceded at trial that the proper fair market value before the casualty was $ 10,450. In calculating her claimed automobile casualty loss on her 1982 Federal income tax return, petitioner claimed a fair market value after the incident of $ 1,000. She testified that she arrived at this amount because The Motor Coach Ltd. offered to purchase the damaged car for that amount of money. Petitioner offered no evidence except her own unsupported testimony of such an offer. Respondent, however, introduced into evidence a financial statement signed by petitioner and notarized on July 8, 1982, wherein the Jaguar is valued at approximately *127 $ 5,000. Petitioner's testimony at trial about her belief of the car's worth is inconsistent with her signed statement in 1982. We are not required to accept petitioner's self-serving and uncorroborated testimony, particularly where other and better evidence to prove the point in question is available. Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964). Petitioner has failed to prove that she suffered a casualty loss in excess of the amount allowed by respondent. Respondent's disallowance of part of petitioner's claimed casualty losses is sustained. Respondent disallowed a total of $ 7,146 in casualty losses, of which $ 5,454 was a disallowed automobile casualty loss. We have sustained respondent's disallowance of the automobile casualty loss in accordance with the statutory notice but hold that respondent has failed to satisfy her burden of proving that there was no automobile casualty or that losses allowed in the deficiency notice should be disallowed now for any other reason. The disallowance of $ 1,742 of casualty losses other than the automobile casualty loss was not disputed by *128 petitioner and therefore is sustained. Issue 4: Hypothecated Savings Account
In 1981 petitioner hypothecated a savings account in her own name as security for a loan of $ 100,000 from BSL to Morris Wolf to purchase the Diane (the bank loan). Petitioner received a 50 percent interest in the yacht. The hypothecation agreement provided that in the event of default after 90 days BSL would proceed against Morris Wolf for the debt and, in the event the bank could not collect from him, petitioner would be secondarily liable. Four days after petitioner signed the hypothecation agreement, Morris Wolf signed a 6-month promissory note to petitioner in the amount of $ 100,000 (the 6-month note) which provided for interest at a rate of 40 percent after 6 months. The purpose of the 6-month note was to give petitioner additional assurance that her hypothecated savings account would be released timely. Morris Wolf did not timely repay the bank note. In May of 1982 petitioner sued BSL in connection with the hypothecation agreement and claimed that her secondary liability was discharged because BSL had not proceeded against Morris Wolf with respect to the bank note. Petitioner also *129 sued Morris Wolf with respect to the 6-month note in 1982. At the end of 1982 petitioner's savings account had not been released, and she had not received payment on the 6-month note. At that time petitioner's savings account was still in her name, and she had made no payment to BSL pursuant to her obligation as guarantor on the bank loan. In addition, the financial condition of Morris Wolf and the relationship between Morris Wolf and BSL indicated that Morris Wolf would satisfy the underlying obligation. In March of 1983, BSL sued Morris Wolf with respect to the bank note to obtain payment. Morris Wolf fully satisfied the bank note in November of 1983 with funds he received from the sale of an apartment house in which he had an interest. Petitioner's suit against BSL in connection with her hypothecated savings account was dismissed in November 1983 after the $ 100,000 note to BSL had been paid by Morris Wolf. In November of 1983 petitioner's suit with respect to the 6-month note was also dismissed as to the principal amount. At that time, BSL released petitioner's savings account. Petitioner did not report the release of her savings account as income in 1983. A jury verdict *130 announced in January of 1988 disallowed the interest on the 6-month note. On her 1982 Federal income tax return petitioner claimed business bad debts with respect to both her hypothecated savings account and the 6-month note in the amounts of $ 152,939 and $ 100,000 respectively. Respondent disallowed both claimed business bad debt deductions. At trial, petitioner conceded that she was not entitled to a business bad debt deduction with respect to the 6-month note. Petitioner contends that she is entitled to a business bad debt deduction in the amount of $ 100,000 with respect to her hypothecated savings account. Respondent's position is that petitioner has not proven that her hypothecation was made in connection with any trade or business as required by section 166(d). We agree with respondent's position. Moreover, as noted above, petitioner was not required to pay on her guarantee and has suffered no loss in connection with the hypothecation agreement. For that reason alone petitioner is not entitled to the claimed deduction. See Black Gold Energy Corp. v. Commissioner, 99 T.C. 482, 488 (1992). Respondent's disallowance of petitioner's claimed *131 bad debt deduction is sustained. To reflect concessions, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Par. 10(b)(xix) of the petition alleged: Petitioner was not a party to [the settlement between Morris Wolf and respondent]. There was no final determination on the merits of the action. Therefore the Commissioner erred in applying [res] judicata to this issue.↩
3. For taxable years beginning after December 31, 1986, however, in general noncorporate taxpayers may not deduct personal interest. Sec. 163(h)↩.